The UNITED BANK OF KUWAIT PLC, Plaintiff,

v.

ENVENTURE ENERGY ENHANCED OIL RECOVERY ASSOCIATES— CHARCO REDONDO BUTANE, Enventure Energy, Inc., Joseph W. Hill, John P. Burke, Kenco Industries, Inc. d/b/a Energy Materials, Inc., Frederick J. Hughes, Courtland R. LaVallee, William G. Netols, Donald W. Yates, Michael D. Reed, Robert E. Rogers, Frank J. Burke, Bridgett K. Davis, M.D., Norman Deane, M.D., Cohen & Silverman, a New York Partnership, Ronald D. Wall, and Hodgson, Russ, Andrews, Woods & Goodyear, Defendants.

HODGSON, RUSS, ANDREWS, WOODS & GOODYEAR, Defendant and Third–Party Plaintiff,

v.

LeBOEUF, LAMB, LEIBY & MacRAE, Third–Party Defendant.

No. 86 Civ. 4214 (JMC).

United States District Court, S.D. New York.

Sept. 21, 1989.

Lynn A. Dummett, LeBoeuf, Lamb, Leiby & MacRae, John Patrick Deveney, Kellner, Chehbar & Deveney, New York City, for plaintiff.

Glen J. Pogust, Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant Hodgson, Russ, Andrews, Woods & Goodyear.

Michelle C. Lombino, Damon & Morey, Buffalo, N.Y., for defendant Davis.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendant and third-party plaintiff Hodgson, Russ, Andrews, Woods & Goodyear's ["Hodgson"] motion for summary judgment is granted. Fed.R.Civ.P. 56. Hodgson's motion to disqualify third-party defendant LeBoeuf, Lamb, Leiby & MacRae ["LeBoeuf"] as counsel to UBK is moot. LeBoeuf's motion to dismiss the third-party complaint is moot. Bridgett K. Davis' motion to set aside the default judgment is denied. Fed.R.Civ.P. 60(b).

## BACKGROUND

Plaintiff, The United Bank of Kuwait PLC ["UBK"], is a banking corporation, chartered and existing under the laws of the United Kingdom, and licensed to conduct business in the United States. Defendant Enventure Energy Enhanced Oil Recovery Associates—Charco Redondo Butane ["Charco Redondo"], is a limited partnership organized and existing under the laws of the State of New York, the primary purpose of which was to explore and drill for oil and natural gas through the use of butane injection oil recovery technology. Defendant Enventure Energy, Inc. ["Enventure"] is the general partner of Charco Redondo. Ronald Allen, not a defendant in this action, but a principal player in the events giving rise to it, is president of Enventure.

Charco Redondo was formed by agreement, dated November 15, 1984, between Enventure and fifteen limited partners [the "Charco Redondo Agreement"]. Defendants Joseph W. Hill, John P. Burke, Kenco Industries, Inc. d/b/a Energy Materials, Inc., Frederick J. Hughes, Courtland R. LaVallee, William G. Netols, Donald W. Yates, Michael D. Reed, Robert E. Rogers, Frank J. Burke, Bridgett K. Davis, M.D., Norman Deane, M.D., Cohen & Silverman, a New York partnership, and Ronald D. Wall,[1] are the limited partners of Charco Redondo [the "limited partners"].[2] Defendant and third-party plaintiff Hodgson is counsel to the Charco Redondo limited partnership and Enventure, the general partner. Third-party defendant LeBoeuf represented UBK in the loan transaction.

The Charco Redondo Agreement required each limited partner to execute an "Assumption Agreement" in favor of an anticipated financial institution willing to lend Charco Redondo $2,050,000 to fund its operations [the "loan amount"]. Pursuant to the Assumption Agreement, each limited

1. Pursuant to a stipulation, Ronald D. Wall has been dropped from the current action and UBK has commenced a separate action against him. *See United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Associates— Charco Redondo Butane; Enventure Energy, Inc.*

*and Ronald D. Wall,* 89 Civ. 4587 (JMC) (S.D. N.Y. June 29, 1989).

2. Of the fifteen limited partners originally named as defendants, UBK's claim against defendant Louis A. DelCotto has been dismissed.

partner agreed to assume personal liability for their pro rata share of Charco Redondo's obligation to repay the loan amount. Prior to the execution of the Charco Redondo Agreement on November 15, 1984, each limited partner executed an Assumption Agreement in favor of Marine Midland Bank, Ltd., which had originally agreed to finance the loan amount [the "Marine Assumption Agreements"]. In addition, each limited partner executed a Limited Power of Attorney in favor of Allen [the "Limited Powers of Attorney"]. Sometime subsequent to November 15, Marine Midland withdrew as lender. At some point thereafter, Allen negotiated with UBK for it to finance the Charco Redondo limited partnership, under virtually the same financial terms as had been agreed upon by Charco Redondo and Marine Midland.

On December 7, 1984, UBK and Charco Redondo entered into a commercial installment loan agreement and note, whereby UBK lent Charco Redondo $2,050,000 [the "loan agreement"]. At the same time, Charco Redondo posted a surety bond for the full amount of the loan. The bond was issued by the Glacier General Assurance Company ["Glacier General"]. Since the loan agreement required each limited partner to execute an assumption agreement in UBK's favor, Allen took the signature pages from the Marine Assumption Agreements and attached them to virtually identical assumption agreements in favor of UBK [the "UBK Assumption Agreements"].

During the closing of the loan transaction on December 7, 1984, LeBoeuf, on behalf of UBK, requested that Hodgson issue an opinion letter to UBK concerning the validity and binding effect of the UBK Assumption Agreements. The Hodgson opinion letter was specifically addressed to UBK and contains three distinct sections: (1) a list of documents reviewed by Hodgson in its preparation of the letter; (2) those facts assumed by Hodgson without any investigation; and (3) the opinions

themselves. The concluding paragraph of the opinion letter expressly authorizes reliance by the addressee, UBK. The paragraph provides that it "is intended solely for your [UBK's] benefit and may not be relied upon, referred to or otherwise used by any other person without our express written consent." Affidavit of Charles M. McCaghey, Exh. A, 86 Civ. 4214 (JMC) (S.D.N.Y. Mar. 27, 1989) ["McCaghey Affidavit"]. The opinion most relevant to the instant action is contained in paragraph 6(b), which provides that "[i]nsofar as it purports to create an obligation ... each Assumption Agreement is a legal, valid and binding obligation of the Limited Partner on whose behalf it is executed and delivered, enforceable against such Limited Partner in accordance with its terms...." [3] *Id.*

In December 1985, Glacier General, the surety company, was declared insolvent and forced into liquidation. By February 28, 1986, Charco Redondo had failed to make an interest payment due on that date. Each of these occurrences constituted events of default under the loan agreement, and UBK elected to accelerate payment of all principal, interest, and other amounts due. When no payment was forthcoming by Charco Redondo, or the limited partners, this action was commenced.

On November 16, 1987, the Court denied UBK's motion for partial summary judgment with respect to the validity and binding nature of the UBK Assumption Agreements and the Limited Powers of Attorney executed by ten of the fifteen limited partners. The motion was denied on the ground that a material issue of fact existed as to the intent of the limited partners when they executed the Limited Powers of Attorney which UBK relied upon in seeking enforcement of the UBK Assumption Agreements. *See* Memorandum and Order, at 15–16, 86 Civ. 4214 (JMC) (S.D.N.Y.

---

**3.** Whether in fact the letter opines that the UBK Assumption Agreements were valid and constitute binding legal obligations of the limited partners "on whose behalf" they were executed is a question of fact reserved for trial. The Court's decision is limited to whether Hodgson is entitled to summary judgment as a matter of law.

Nov. 16, 1987) ["Memorandum and Order"].

The Court granted UBK's motion to amend its complaint to assert a claim against Hodgson, the law firm which issued the opinion letter to UBK. Memorandum and Order, at 15. UBK alleges that it relied to its detriment on the opinion letter in connection with UBK's loan to Charco Redondo. Amended Complaint, at ¶ 89. Specifically, UBK asserts that if the UBK Assumption Agreements are unenforceable, Hodgson is liable to the extent that UBK is unable to recover from any one or more of the Charco Redondo limited partners. Amended Complaint, at ¶ 90. Hodgson has brought a third-party action against LeBoeuf for contribution.

Hodgson now moves for summary judgment, claiming that it is not liable to UBK as a matter of law because no privity of contract existed between Hodgson and UBK. Hodgson also moves to disqualify LeBoeuf as counsel to UBK. LeBoeuf moves to dismiss Hodgson's third-party complaint. Lastly, Bridgett K. Davis moves to set aside a default judgment entered against her on March 30, 1987.

### DISCUSSION

### I. *Summary Judgment Motion*

A. Standards for the Application of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a district court shall grant a motion for summary judgment if it determines that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The court is not to resolve disputed issues of fact, but must "assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. United States Fire Insurance Co.,* 804 F.2d 9, 11 (2d Cir.1986) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986); *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985)), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

The mere existence of disputed factual issues, however, is not enough to defeat a motion for summary judgment. *Knight,* 804 F.2d at 11–12; *Quarles v. General Motors Corp.,* 758 F.2d 839, 840 (2d Cir.1985) (per curiam). For the issues of fact to be "genuine," they must provide a basis for "a rational trier of fact to find for the non-moving party." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Most significantly, the issues of fact must be "material to the outcome of the litigation." *Knight,* 804 F.2d at 11. It stands to reason that, in order to be material, the disputed issues must implicate cognizable legal principles upon which recovery may be had, or liability denied, thus entitling the moving party to judgment "as a matter of law." Fed.R. Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Kronfeld v. Trans World Airlines,* 832 F.2d 726, 731 (2d Cir.1987), *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 700 (1988); *see also* S.A. Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183, 189–90 (1987) (discussing *Anderson*). In *Anderson,* the Supreme Court stated that, with respect "to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." 477 U.S. at 248, 106 S.Ct. at 2510.

In the procedural sense, the moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). This burden may be met by demonstrating the lack of any evidence to support the non-moving party's claim. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct.

2548, 2553, 91 L.Ed.2d 265 (1986). The party opposing summary judgment must then come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment will be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552.

When a moving party has carried his burden under Rule 56(c), his "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. A party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight,* 804 F.2d at 12, (nor on a "bare assertion that evidence to support a fanciful allegation lies within the exclusive control of the defendants, and can be obtained only through discovery," *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 251 (2d Cir.1985)), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Rather, a party opposing summary judgment "must provide 'concrete particulars' showing that a trial is needed, and '[i]t is not sufficient merely to assert a conclusion without supplying supporting arguments of facts in opposition to that motion.' " *R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). In sum, where the court determines that "the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Eastway,* 762 F.2d at 251.

### B. Hodgson's Motion

■ Hodgson moves for summary judgment dismissing UBK's claim for negligent

misrepresentation on the ground that the absence of privity between Hodgson and UBK precludes liability as a matter of law. In opposing the motion, UBK argues that Hodgson is liable for professional negligence absent privity of contract because the opinion letter issued by Hodgson was addressed to UBK and invited reliance by UBK. It is undisputed that the opinion letter was addressed to UBK and invited reliance by UBK. More importantly, it is also undisputed that LeBoeuf requested that Hodgson issue the opinion letter to UBK concerning, *inter alia,* the binding effect of the UBK Assumption Agreements with respect to the limited partners. The critical issue presented is whether an attorney may be held liable, absent privity of contract, to a third party who relies to his detriment upon an allegedly negligent misrepresentation in an opinion letter.

■ A federal court sitting in diversity must apply the substantive law of the forum state. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In the area of legal malpractice, it is well settled in New York that an attorney is not liable in simple negligence to a third party absent privity of contract. *See, e.g., Associated Factors Corp. v. Paul M. O'Neill Detective Agency,* 146 A.D.2d 728, 537 N.Y.S.2d 212, 213 (2d Dep't 1989); *Council Commerce Corp. v. Schwartz, Sachs & Kamhi, P.C.,* 144 A.D.2d 422, 534 N.Y.S.2d 1, 2 (2d Dep't 1988); *Estate of Spivey v. Pulley,* 138 A.D.2d 563, 526 N.Y.S.2d 145, 146 (2d Dep't 1988); *Michalic v. Klat,* 128 A.D.2d 505, 512 N.Y.S.2d 436, 438 (2d Dep't 1987); *National Westminster Bank USA v. Weksel,* 124 A.D.2d 144, 511 N.Y.S.2d 626, 628 (1st Dep't), *appeal denied,* 70 N.Y.2d 604, 519 N.Y.S.2d 1027, 513 N.E.2d 1307 (1987); *Viscardi v. Lerner,* 125 A.D.2d 662, 510 N.Y.S.2d 183, 185 (2d Dep't 1986). However, an attorney is liable for harm caused by professional negligence to a third party not in contractual privity if the attorney has committed fraud, collusion, or a malicious act. *Viscardi,* 510 N.Y.S.2d at 185; *Cronin v. Scott,* 78 A.D.2d 745, 432 N.Y.S.2d 656, 658 (3d Dep't

1980), *appeal dismissed*, 52 N.Y.2d 999, 419 N.E.2d 1079, 438 N.Y.S.2d 80 (1981); *Gifford v. Harley*, 62 A.D.2d 5, 404 N.Y. S.2d 405, 406 (3d Dep't 1978).

Three recent New York cases have addressed the issue of when a claim by a noncontractual party for an attorney's allegedly negligent misrepresentation in an opinion letter or other type of formal writing is actionable under New York law. In *National Westminster Bank USA v. Weksel*, 124 A.D.2d 144, 511 N.Y.S.2d 626 (1st Dep't), *appeal denied*, 70 N.Y.2d 604, 519 N.Y.S.2d 1027, 513 N.E.2d 1307 (1987), a bank sued a law firm for negligence and fraud in the preparation of a Securities and Exchange Commission ["SEC"] filing which the bank relied upon to its detriment in extending credit to the firm's client. 511 N.Y.S.2d at 628. In an attempt to obtain credit, the client supplied the bank with the documents prepared by the law firm and filed with the SEC. *Id.* at 628. The court found that no allegation of fact in the complaint permitted an inference that the defendant law firm knew of its client's desire to use the documents prepared for the SEC filing to obtain a loan from the plaintiff bank. *Id.* at 629. Since the law firm was not aware that the bank would rely upon the documents, the court dismissed the plaintiff's claim for negligent and fraudulent preparation of the SEC filing. *Id.*

Recently, in *Council Commerce Corp. v. Schwartz, Sachs & Kamhi, P.C.*, 144 A.D.2d 422, 534 N.Y.S.2d 1 (2d Dep't 1988), the Appellate Division considered for the first time whether a noncontractual party may recover for an attorney's allegedly negligent misrepresentation in an opinion letter. The court held that the defendant law firm was not liable for mere negligence in the preparation of an opinion letter furnished to the plaintiff lender in a loan transaction. 534 N.Y.S.2d at 2. Since the law firm prepared and executed the opinion letter "in the course of representing their clients in the loan transaction," the court concluded that the absence of privity precluded imposition of liability on the law firm. *Id.* Thus, the court reaffirmed "[t]he firmly established rule ... that ab-

sent fraud, collusion, malicious acts or other special circumstances, an attorney is not liable to third parties not in privity for harm caused by professional negligence." *Id.* (quoting *Viscardi*, 125 A.D.2d at 663–64, 510 N.Y.S.2d at 185).

Most recently, in *Associated Factors Corp. v. Paul M. O'Neill Detective Agency*, 146 A.D.2d 728, 537 N.Y.S.2d 212 (2d Dep't 1989), the Appellate Division once again considered whether a noncontractual party may recover for an attorney's negligent misrepresentation in an opinion letter. As in *Council Commerce Corp.*, the court dismissed the claim due to the lack of privity and reaffirmed the privity requirement in the area of legal malpractice. *See* 537 N.Y.S.2d at 213.

In certain areas of professional negligence, the privity requirement has been relaxed. For example, the New York Court of Appeals recently refined an accountant's liability to noncontractual parties under the *Ultramares* doctrine originally formulated by Chief Judge Cardozo in the landmark case of *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). The Court of Appeals held:

> Before accountants may be held liable in negligence to noncontractual parties who rely to their detriment on inaccurate financial reports, certain prerequisites must be satisfied: (1) the accountants must have been aware that the financial reports were to be used for a particular purpose or purposes; (2) in furtherance of which a known party or parties was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of the party or parties' reliance.

*Credit Alliance Corp. v. Arthur Anderson & Co.*, 65 N.Y.2d 536, 483 N.E.2d 110, 118, 493 N.Y.S.2d 435, 443 (1985).

To date, no New York Court of Appeals decision has extended the *Ultramares* doctrine, refined by *Credit Alliance*, to the area of legal malpractice. However, one

recent New York Court of Appeals decision extended the *Credit Alliance* standard for liability to engineers. *See Ossining Union Free School District v. Anderson LaRocca Anderson,* 73 N.Y.2d 417, 539 N.E.2d 91, 541 N.Y.S.2d 335 (1989). In *Ossining,* the court observed that "while the rule has been developed in the context of cases involving accountants, it reflects our concern for fixing an appropriate ambit of duty, and there is no reason for excepting from it defendants other than accountants who fall within the narrow circumstances we have delineated." 539 N.E.2d at 94–95, 541 N.Y.S.2d at 338–39. However, *Ossining* did not address the privity limitation in legal malpractice cases, and thus did not consider the need to define the ambit of duty in a manner that does not impinge upon the policy considerations underlying the privity requirement.

In response to Hodgson's assertion that the absence of privity warrants dismissal of UBK's claim as a matter of law, UBK relies upon *Vereins–Und Westbank, AG v. Carter,* 691 F.Supp. 704 (S.D.N.Y.1988) and *Crossland Savings FSB v. Rockwood Insurance Co.,* 700 F.Supp. 1274 (S.D.N.Y. 1988), two recent district court cases where an attorney was found liable to a third party for negligent misrepresentations in an opinion letter despite the absence of contractual privity.

In *Vereins,* Interdiscount Ltd. ("IDL") extended credit to each of four limited partnerships, evidenced, in part, by a partnership note. *Vereins,* 691 F.Supp. at 706. The defendant law firm represented each of the limited partnerships, the general partner, and the promoter, Carter. *Id.* Vereins–Und Westbank, AG ("Vereins") subsequently purchased the partnership notes from IDL, evidenced by Note Purchase Agreements. *Id.* In connection with the loan transaction, Carter *expressly instructed his attorney* to prepare an opinion letter for IDL because counsel for IDL had requested such a letter. *Id.* Most notably, the opinion letter provided that it "may be relied upon by IDL and its assignee under the [Note Purchase] Agreement." *Id.*

*Vereins* held that the tripartite *Credit Alliance* standard for accountants' negligence liability also governs attorneys' liability for negligent misrepresentations in an opinion letter to a third party not in a relation of privity. *See id.* at 716. However, the court limited its holding by noting that "there is nothing in [*Ultramares*] to suggest that, *absent problems of confidentiality or privilege,* lawyers as a class should receive any special treatment...." *Id.* at 712–13 (emphasis added).

*Vereins* recognized that "[a]lthough the lower courts have been singularly inarticulate as to their reasons for dismissing negligence claims against lawyers, it seems probable that they were motivated by a desire to avoid encroaching upon [the] foundations of the attorney-client relationship." *Id.* at 715; *see also Crossland,* 700 F.Supp. at 1282–83. In *Vereins,* the attorney's client specifically requested preparation of the opinion letter for the third party and the letter expressly authorized reliance by the third party. *Id.* at 706. Based upon these facts, the court concluded that the imposition of liability would not impinge upon the attorney-client privilege or the attorney's obligation to zealously represent his client. *Id.* at 715–16.

In the instant action, the opinion letter was clearly addressed to UBK and the concluding paragraph specifically invited reliance by UBK. However, Hodgson's client did not instruct Hodgson to prepare the opinion letter. Rather, LeBoeuf, on behalf of UBK, requested that Hodgson issue the opinion letter. Therefore, *Vereins* does not support the imposition of liability upon Hodgson.

UBK's reliance on *Crossland Savings FSB v. Rockwood Insurance Co.,* 700 F.Supp. 1274 (S.D.N.Y.1988), is equally misplaced. In *Crossland,* a case involving similar facts and some of the same parties as *Vereins,* the court held that the third-party plaintiff had stated a cause of action against the third-party defendant law firm for negligent misrepresentations in an opinion letter. *Id.* at 1284. *Crossland* dismissed the notion that an attorney's negligent misrepresentations in an opinion letter

are actionable *only* by the actual client who formally retained the attorney and is thus in privity of contract. *Id.* at 1282. The court found that "[w]hen a lawyer *at the direction of her client* prepares an opinion letter which is addressed to the third party or which expressly invites the third party's reliance she engages in a form of limited representation." *Id.* (emphasis added). Such an imposition of liability on the law firm would not conflict with the traditional privity requirement which is based in part on a desire to avoid encroaching upon the ethical obligations underlying the attorney-client relationship. *Id.* In considering these ethical obligations, the court concluded:

> As to the loss of confidentiality, where the opinion letter is addressed to the third party at the direction of the client, any resulting loss of confidentiality is a result of the client's own decision and not that of the attorney. The sacrifice of confidentiality is the consequence of the client's choice. As to zealous representation, the rendering of an opinion to a third party at the client's direction for the advancement of a client's interest does not detract in any way from the attorney's loyalty to her client; she is serving her client's interest by rendering the opinion. That the risk of liability may induce caution in not inappropriate. The rendering of a legal opinion is a service of the attorney's duties as to which judgment is expected to prevail over zeal. Finally, as to the ethical prohibition on the attorney's representation of an adverse party, that prohibition is not present where the client recognizes that potential conflict and nonetheless directs the attorney to furnish the opinion to the adverse party.

*Id.* at 1283 (citations omitted).

In determining whether an attorney is under a duty of care to third parties with whom the attorney is not in privity of contract, the paramount concern becomes the attorney's ethical obligations to his client. Specifically, the imposition of a duty of care to an adverse third party is likely to interfere with the client's right to confidentiality. The Model Rules of Professional Conduct permit an attorney to reveal information relating to the representation of a client "to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved...." Model Rules of Professional Conduct Rule 1.6(b)(2) (1983). Thus, the imposition of such a duty would "giv[e] the adverse party a weapon with which to pierce attorney-client confidences, and might detract from the attorney's incentive to represent clients zealously." *Crossland*, 700 F.Supp. at 1282-83. Lastly, the imposition of a duty of care may conflict with the attorney's ethical obligation "not [to] represent a client if the representation of that client may be materially limited by the lawyer's responsibility to another client or to a third person, or by the lawyer's own interests...." [4] Model Rules of Professional Conduct Rule 1.7(b) (1983).

In the instant action it is undisputed that neither Charco Redondo nor Enventure instructed Hodgson to prepare the opinion letter. Memorandum of Law in Opposition to Motion of Defendant Hodgson for Summary Judgment, at 8, 86 Civ. 4214 (JMC) (S.D.N.Y. May 9, 1989) ("LeBoeuf, on behalf of UBK, had requested that Hodgson issue an opinion letter to UBK concerning, *inter alia*, the validity and binding effect of the Assumption Agreements with respect to the Limited Partners."). Since neither Charco Redondo nor Enventure instructed Hodgson to prepare the opinion letter, the imposition of a duty of care upon Hodgson to UBK, absent privity of contract, impinges upon the client's privilege of confidentiality, the attorney's ethical obligation to zealously represent its client, and the ethical prohibition on an attorney's representation of an adverse party. For example, Hodgson would have less of an incentive to zealously represent Charco Redondo and Enventure. Rather than provide wholly disinterested representation to its clients, Hodgson may have proceed with

---

**4.** Of course, such representation is permitted if the client consents after full disclosure. Model

Rules of Professional Conduct Rule 1.7(b)(2) (1983).

caution and temper its advice so as to limit its chances of being sued by UBK.

The Court finds as a matter of law that the absence of privity and the encroachment on the ethical obligations of the attorney-client relationship preclude the imposition of liability upon Hodgson for negligent misrepresentation. Accordingly, Hodgson's motion for summary judgment dismissing UBK's claim for negligent misrepresentation is granted. Fed.R.Civ.P. 56.

## II. *Motion to Disqualify Counsel*

■ Hodgson moves to disqualify LeBoeuf as counsel for UBK on the grounds that (1) LeBoeuf's participation in the events giving rise to this action require that it be called as a witness and (2) LeBoeuf's appearance as counsel to UBK and as pro se counsel in defense of Hodgson's third-party claim creates a conflict of interest.

Hodgson's motion is moot in light of the resolution of Hodgson's summary judgment motion. Once summary judgment was granted in favor of Hodgson, it disposed of all issues between Hodgson and the other parties. *See Lupert v. California State Bar*, 761 F.2d 1325, 1329 (9th Cir.), *cert. denied*, 474 U.S. 916, 106 S.Ct. 241, 88 L.Ed.2d 251 (1985).

## III. *Motion to Dismiss the Third–Party Complaint*

■ Hodgson served a third-party complaint against LeBoeuf alleging claims sounding in contribution based on LeBoeuf's participation as counsel to UBK with respect to the loan transaction. *See* Third–Party Complaint, at ¶¶ 5–10. Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, LeBoeuf moves to dismiss Hodgson's third-party complaint for failure to state a claim upon which relief can be granted.

Since the Court has granted summary judgment in favor of Hodgson dismissing UBK's claim against Hodgson for negligent misrepresentation, Hodgson's third-party action against LeBoeuf for contribution is moot and is no longer properly before the Court. As Hodgson is no longer a party to this action, its third-party complaint is dismissed.

## IV. *Motion to Set Aside Default Judgment against Bridgett K. Davis*

■ The original summons and complaint were mailed to Davis via registered mail on May 26, 1986. Thereafter, voluminous papers in this action were mailed to Davis by various parties, including UBK's Amended Complaint. On March 19, 1987, Davis having failed to appear, UBK served on Davis a proposed default judgment and affidavit in support. A default judgment was entered against Davis on March 30, 1987 in the amount of $57,642.84. Notice of Entry of Default subsequently was served on Davis on April 10, 1987. Davis has not appeared in this action before making the instant motion to set aside the default judgment on March 28, 1988.

Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure, "[f]or good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed.R.Civ.P. 55(c). The more stringent test for setting aside a default judgment under Rule 60(b) provides, in relevant part, that the court may relieve a party from a final judgment for "mistake, inadvertence, surprise, or excusable neglect," Fed.R.Civ.P. 60(b)(1), or where "the judgment is void," Fed.R.Civ.P. 60(b). Davis relies upon Rule 60(b)(1) and (4) to set aside the default judgment.

Davis asserts that she is entitled to Rule 60(b)(1) relief because her decision not to respond to the complaint was due to her mistaken but genuine belief "that [her] interests would be represented and protected by counsel for [her] co-defendants." Affidavit of Bridgett K. Davis, at ¶ 6, 86 Civ. 4214 (JMC) (S.D.N.Y. Mar. 25, 1988) ["Davis Affidavit"]. Davis mistakenly believed that UBK would not "be allowed to prevail on its case against [her] unless it proved its case against all the others as well." Davis Affidavit, at ¶ 6.

■ The type of mistake or excusable neglect asserted by Davis does not warrant

relief under Rule 60(b)(1). Application of Rule 60(b)(1) in the context of default judgments requires consideration of three factors: (1) whether the default was willful; (2) whether the defendant has a meritorious defense; and (3) the resulting prejudice to the nondefaulting party if the default judgment is vacated. *Davis v. Musler,* 713 F.2d 907, 915 (2d Cir.1983); *Brown v. DeFilippis,* 695 F.Supp. 1528, 1530 (S.D. N.Y.1988); *Standard Enterprises v. Bag-It, Inc.,* 115 F.R.D. 38, 39 (S.D.N.Y.1987).

When considering a motion to vacate a default judgment, there are " 'strong policies favoring the resolution of genuine disputes on the merits.' " *Traguth v. Zuck,* 710 F.2d 90, 94 (2d Cir.1983) (quoting *Jackson v. Beech,* 636 F.2d 831, 836 (D.C.Cir. 1980)). Thus, all doubts are resolved in favor of the party seeking relief. *Davis,* 713 F.2d at 915. However, " 'when the adversary process has been halted because of an essentially unresponsive party,' " a default judgment is appropriate to protect the nonmoving party from " 'interminable delay and continued uncertainty as to her rights.' " *Jackson v. Beech,* 636 F.2d 831, 836 (D.C.Cir.1980) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe,* 432 F.2d 689, 691 (D.C.Cir.1970) (per curiam)).

The Court finds that Davis' default was willful. A default is deemed willful where a defendant simply ignores the complaint without action. *Marziliano v. Heckler,* 728 F.2d 151, 156 (2d Cir.1984); *Brown,* 695 F.Supp. at 1530. Thus, "where a party is notified that he is in default and he apparently makes no effort to appear pro se or to explain his situation to the opposing party and to the court, such neglect is inexcusable." *Original Appalachian Artworks, Inc. v. Yuil International Trading Corp.,* 105 F.R.D. 113, 116 (S.D.N.Y.1985).

By her own admission, Davis received the summons and complaint and other voluminous papers generated in this action. David Affidavit, at ¶ 4. Although Davis knew that she was subject to a judgment for money damages, she failed to appear in this action. A default judgment was entered against Davis on March 30, 1987, and

Notice of Entry of Default Judgment was served on Davis on April 10, 1987. Davis claims that she was "disabused of [her] mistaken notion" when the default judgment was transferred for execution. *Id.* at ¶ 8. However, Davis did not move the Court to vacate the default judgment until March 28, 1988, just two days prior to the expiration of the one year deadline imposed by Rule 60(b). In sum, Davis is an "essentially unresponsive party" who willfully ignored the proceedings before this Court. *Cf. Sony Corp. v. S.W.I. Trading, Inc.,* 104 F.R.D. 535, 540 (S.D.N.Y.1985) (finding that defendant willfully ignored the proceedings where defendant never responded to the numerous papers generated in the action and failed to move to vacate the default judgment until plaintiff first moved for an order of contempt).

Davis' willful default is not the type of nonculpable conduct for which relief under Rule 60(b) is appropriate. Therefore, there is no need to consider whether Davis had a meritorious defense and the resulting prejudice to UBK if the default judgment is vacated. *See Bobrow Greenapple & Skolnik v. Woods,* 865 F.2d 43, 44 (2d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3188, 105 L.Ed.2d 696 (1989). Accordingly, Davis' motion to set aside the default judgment under Rule 60(b)(1) is denied.

In the alternative, Davis argues that the default judgment should be set aside under Rule 60(b)(4) because it is void for lack of in personam jurisdiction. Rule 60(b)(4) simply provides that a court may relieve a party from a final judgment where that judgment is void. Fed.R.Civ.P. 60(b)(4). A judgment rendered without in personam jurisdiction is void, *Pennoyer v. Neff,* 95 U.S. 714, 730, 24 L.Ed. 565 (1877), and courts should not hesitate to vacate a void judgment pursuant to Rule 60(b)(4), *Leab v. Streit,* 584 F.Supp. 748, 760 (S.D.N. Y.1984).

By her own admission, Davis received the original summons and complaint via registered mail. Davis Affidavit, at ¶ 11. She argues that the default judgment is void for lack of in personam jurisdiction because she was not served by any

**1206**

means recognized by Rule 4 of the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 4. However, under ¶ 6 of the Assumption Agreement, service of process by registered mail shall constitute proper service. Nonetheless, Davis contends that she has not been properly served because the validity of the Assumption Agreements is the ultimate issue in this case. Davis Affidavit, at ¶¶ 12–14. This argument is unpersuasive. As the Court previously stated in its denial of defendant Yates' motion to dismiss for lack of in personam jurisdiction, "[i]f the validity of the Assumption Agreements is upheld, Yates will have been properly served pursuant to its provisions and, in all likelihood, will be deemed to have waived any defense of lack of personal jurisdiction." Memorandum and Order, at 16. Accordingly, Davis' motion to set aside the default judgment under Rule 60(b)(4) for lack of in personam jurisdiction is denied.

For all the foregoing reasons, Davis' motion to set aside the default judgment under Rule 60(b)(1) and (4) is denied.

### CONCLUSION

Defendant and third-party plaintiff Hodgson's motion for summary judgment is granted. Fed.R.Civ.P. 56. Hodgson's motion to disqualify third-party defendant LeBoeuf as counsel to UBK is moot. LeBoeuf's motion to dismiss the third-party complaint is moot. Bridgett K. Davis' motion to set aside the default judgment is denied. Fed.R.Civ.P. 60(b). This action is hereby placed on the Courts's Ready Calendar. The parties are ordered to be prepared to proceed to trial on 48 hours notice.

SO ORDERED.