In re **EX–CEL CONCRETE COMPANY, INC., Debtor.**

**CITICORP MORTGAGE, INC., Appellant,**

v.

**Richard H. BROOKS, Chapter 7 Trustee; Kevin R. Merritt; Laura L. Merritt; Lawyers Title Insurance Corp., Appellees.**

**BAP No. AZ–94–1489–VAsM.**
**Bankruptcy No. 90–04525–PHX–RGM.**
**Adv. No. 94–180.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 19, 1995.

Decided March 10, 1995.

Eddward P. Ballinger, Jr., Jeanean Kirk, Phoenix, AZ, for appellant.

Terrie L. Thomas, Phoenix, AZ, for Kevin and Laura Merritt.

LeslieAnn Haacke, Phoenix, AZ, for Richard H. Brooks, Trustee.

Before VOLINN, ASHLAND and MacDONALD,[1] Bankruptcy Judges.

## *OPINION*

VOLINN, Bankruptcy Judge:

### OVERVIEW

The bankruptcy court authorized a sale of the debtor's property free and clear of liens. The resulting proceeds were significantly less than the amount secured by the senior lien. The senior lienor had not received notice of the sale and consequently did not appear. The court determined that the trustee's attempted notice to the senior lienor satisfied due process concerns and denied the senior lienor's motion to set aside the order authorizing the sale. We REVERSE.

### FACTS AND PROCEEDINGS BELOW

Michael D. McConnell and Dana McConnell, husband and wife, and their business, Ex–Cel Concrete Company (Ex–Cel), filed chapter 11 petitions in May of 1990.[2] The Ex–Cel estate held a second position lien on

---

1. Hon. Donald MacDonald IV, Bankruptcy Judge for the District of Alaska, sitting by designation.

2. The McConnells are not parties to these proceedings.

the McConnells' residence in Scottsdale, Arizona (the property). Appellant, Citicorp Mortgage, Inc. (Citicorp) held the first position lien on the McConnell property, a deed of trust securing a note from the McConnells in the amount of $325,000.

Citicorp appeared in the McConnell case through the law firm Crosby & Gladner. The McConnells had scheduled Citicorp as a secured creditor claimant for $357,000. Citicorp was not a creditor of Ex–Cel and did not file a claim or general request for notice and did not otherwise appear in the Ex–Cel case. On March 13, 1991, Citicorp moved for relief from the stay in the McConnell case to foreclose its security, alleging a balance of $342,828.67 due on the note.[3] The parties entered into a stipulation under which the McConnells would remain in possession of the property and make monthly payments of one and one-half the monthly amount due under the terms of the note until the arrearage was cured. The McConnells defaulted on the stipulation, apparently having made only two payments, in November of 1991 and February of 1992.

On February 7, 1992, the bankruptcy court authorized the McConnells to sell the property free and clear of liens for an offered price of $366,000. At that time, the balance due on the senior lien would have been approximately $363,000.[4] Citicorp raised no objection to the proposed sale, but the sale failed to consummate.

On March 24, 1992, both the McConnell and Ex–Cel cases were converted to cases under chapter 7, and Richard Brooks was appointed trustee in each. Because the secured debt exceeded the value of the property, Brooks, as trustee of the McConnell estate, abandoned the property to the McConnells in April of 1992. In June of 1993, Brooks, as trustee of the Ex–Cel estate,

caused Ex–Cel to foreclose its lien and take title to the property. It would appear then, that Brooks, while he was trustee of the McConnell estate, allowed the property to revert to the McConnells while retaining a substantial lien claim against the same property as trustee of the Ex–Cel estate. One year later, Brooks divested the McConnells of any interest in the property by foreclosing as trustee of the Ex–Cel estate. After foreclosure, the McConnells paid Brooks, as trustee of Ex–Cel, $1,000 a month for an unspecified period of time until they vacated the premises. Apparently none of this payment was applied toward Citicorp's lien.

On October 28, 1993, Brooks filed an application with the bankruptcy court to sell the property free and clear of liens in the Ex–Cel case. The application was accompanied by a notice of hearing setting forth the time and place of the hearing and fixing a time for objections. Brooks attempted to serve Citicorp with this application by mailing a copy to Richard Galvan, an attorney with the law firm Carson, Messinger. The application designated Galvan and the firm as "Attorney for Citicorp." Galvan apparently had represented Citicorp previously in other cases before the bankruptcy court. However, Galvan did not represent Citicorp in either the Ex–Cel or McConnell cases. Galvan was on vacation in Spain when the trustee sent his notice, and Carson, Messinger did not forward the notice to Citicorp or return it to the trustee.

On October 29, the Clerk of the Bankruptcy Court sent notice of a hearing regarding sale of the property to "all creditors and interested parties," setting the hearing for December 1, 1993. The notice was sent to all parties on the master mailing list. Not being

---

3. Shortly after filing the motion, in April of 1991, Citicorp sold its lien to Mercantile Trust Company (Mercantile), but remained the servicing agent for the loan. Under an ongoing agreement between the two, Citicorp would reacquire delinquent loans from Mercantile prior to foreclosure. In November of 1993, Mercantile transferred its interest in the lien back to Citicorp. As these transfers are not relevant to the disposition of this appeal, we will refer solely to Citicorp as the senior lienor.

4. The record provided does not expressly establish this figure. Interest would have accrued on the loan at roughly $92 per day or some $2,760 per month. Eleven months of interest, $30,360, added to the balance due in March 1990 of $342,829 is $373,189. The McConnells made two payments of $5,266 under the stipulation prior to defaulting, leaving a balance due of $362,657.

a creditor, and not being on the master list, Citicorp was not sent a notice.

On December 1, 1993, the court held a competitive sale of the property. At the hearing, counsel for the trustee incorrectly informed the court that the debt secured by Citicorp's lien was about $302,000 and that equity would remain for the unsecured creditors.[5] Based directly on this representation, the court permitted the sale to proceed. The sale price was bid to $387,500. As indicated below, Citicorp's debt by this time exceeded $400,000.

On December 2, the court entered an order authorizing sale of the property free and clear of liens to the high bidder, appellees Kevin R. Merritt and Laura L. Merritt.

Not being on the mailing list, and not having been otherwise notified of the hearing, Citicorp had been preparing to foreclose on the property based on the long outstanding default. On December 3, unaware of the bankruptcy court sale, Citicorp filed a notice of a deed of trust trustee's sale of the property.

Citicorp first became aware of the court ordered sale on December 17, 1993, when it received a payoff demand which was sent to Citicorp's counsel, Crosby & Gladner, by appellee Lawyers Title Insurance Company, who provided the title insurance on the property and acted as escrow agent for the transaction. Our record does not indicate why the payoff demand was sent to counsel who were of record as representing Citicorp for the subject property in the McConnell case, while the notice of sale was sent to Galvan, who had no known connection to the property.

The bankruptcy trustee testified that he did not become aware that the sale price would not satisfy Citicorp's lien until Lawyers Title received Citicorp's payoff figure of $442,280 from Crosby & Gladner (presumably between December 17th and 20th). On December 20, the trustee's counsel sent the details of the sale to Crosby & Gladner via facsimile. The transmitted document stated that, in reliance on the court's authorization order, the trustee intended to close the sale two days later and requested Citicorp to accept a payoff figure of $304,000 as payment in full on its lien. Assuming that escrow would not close without its consent, Citicorp did not respond.

The trustee later testified that he was "flabbergasted" that the sale closed, indicating that there was an unresolved problem in his view. Nevertheless escrow was closed on December 23, 1993. Brooks, the Merritts, and the title company all knew at that time that the total sale proceeds were insufficient, and that after deducting costs and commissions, the net proceeds would fail, by some $99,000, to satisfy the senior lien. The Merritts proceeded to take possession of the property following closing and shortly thereafter spent some $15,000 to $20,000 making improvements to it.

On February 18, 1994, Citicorp filed a motion, under Fed.R.Bankr.P. 9024 and Fed.R.Civ.P. 60(b), to set aside the order authorizing the sale. At a hearing on Citicorp's motion on March 7, 1994, the court, now aware of the alleged shortfall in the proceeds, converted the hearing into an adversary proceeding to determine the amount of Citicorp's lien. Further proceedings were held March 15, and the court took the matter under advisement. In an "Order denying Citicorp Mortgage's motion to set aside court order entered December 2, 1993," the court found that: 1) Citicorp had a lien in the amount of 442,280.04; 2) the fair market value of the property in January 1994 was $390,000; and, 3) the sale proceeds available to Citicorp were $353,710.93.

The court determined that the trustee's notice to Galvan was sufficient notice of the sale to satisfy due process considerations. The court then determined, pursuant to

---

5. MR. LANE: Excuse me, I was just trying to get the number. Approximately—again, I don't have the current, but just approximately $302,000, $303,000.

THE COURT: Okay. So there is some equity here? Want to go ahead and have the sale, huh?

MR. LANE: That's correct judge.

§ 363(m) [6], that, because the sale had closed, the "mootness rule," controlled. Balancing the equities in favor of the purchasers, the court denied relief to Citicorp. Citicorp timely appealed.

## STANDARD OF REVIEW

A trial court's denial of a rule 60(b) motion is reviewed for abuse of discretion. *In re Cossio,* 163 B.R. 150, 153 (9th Cir. BAP 1994). A court abuses its discretion if it rests its conclusion on clearly erroneous factual findings or an incorrect legal standard. *Id.; In re Hammer,* 112 B.R. 341, 345 (9th Cir. BAP 1990), *affirmed* 940 F.2d 524 (9th Cir.1991). A court necessarily abuses its discretion by refusing to set aside a void judgment. *Cossio* at 154. Lack of notice may render a judgment void. *Id.* The factual circumstances surrounding notice are reviewed under the clearly erroneous standard set forth in Fed.R.Bankr.P. 8013. Where, as here, the facts are undisputed, the question of whether the resulting judgment was void is reviewed *de novo.*

## ISSUE PRESENTED

On appeal, the parties do not dispute the court's final valuation finding nor the circumstances, as related above, regarding the manner and substance of the trustee's notice to Citicorp. The issues presented, therefore, are: 1) whether the trustee's notice of the proposed sale by mailing notice to an attorney who represented the senior lienor in an unrelated matter was effective notice to the senior lienor; and, if not, 2) whether the defect renders the subsequent order void, so that it must be set aside.

## DISCUSSION

The bankruptcy court correctly determined that, prior to weighing the equities of the parties under the circumstances, it first had to determine that Citicorp received adequate notice of the hearing. The trial court's

ultimate decision to deny Citicorp relief from the order of sale was dependent on its determination that Citicorp had received notice sufficient to protect its due process rights. The court stated in its order that, "[b]ecause notice was proper in this case, the Court must determine whether any other grounds exist to set aside the Trustee's Sale."

Notice analysis takes place on two levels, statutory requirements and constitutional due process concerns. The statute provides that, "[t]he trustee, *after notice and a hearing,* may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1) (emphasis supplied).

The notice referred to in § 363(b)(1) is governed by Fed.R.Bankr.P. 6004(a), which requires the clerk of the bankruptcy court to give notice of the proposed sale to all lienholders not less than twenty days prior to the proposed sale, in the manner provided by Fed.R.Bankr.P. 2002(a)(2). Rule 2002(c), refers to and makes itself subject to Rule 6004.

Where a motion (or application) is made (as was the case here) for authority to sell property free and clear of liens, Bankruptcy Rule 6004(c) requires that it "shall be made in accordance with Rule 9014 and shall be served on the parties who have liens or other interests in the property to be sold."

In its turn, Rule 9014 provides that "reasonable notice and opportunity for hearing shall be afforded any party against whom relief is sought" and instructs that the motion be served "in the manner provided for service of a summons and complaint by Rule 7004. . . ." Rule 7004, governing process, incorporates salient portions of Rule 4 of the Federal Rules of Civil Procedure, but additionally permits service by first class mail under various circumstances. Fed. R.Bankr.P. 7004(b). When service is to be made on a corporation, service may be effect-

---

**6.** "The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."
11 U.S.C. § 363(m).

As indicated above, because the purchasers were aware of the shortfall in proceeds prior to closing, there is considerable question as to their good faith.

ed by mailing a copy of the summons and complaint "to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process...." Fed. R.Bankr.P. 7004(b)(3).

The Code and the Bankruptcy Rules have been deliberately crafted to provide procedural assurance that a party holding or claiming a lien upon real property in the debtor's estate will receive timely notice of the trustee's intention to sell specific property free and clear of liens. The trustee failed to pass even the threshold of the foregoing requirements of the Bankruptcy Code and Rules, since it is undisputed that Citicorp did not receive notice of the sale nor consent[7] to it.

■ The due process clause of the Fifth Amendment requires that notice be—

> reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

■ If the notice requirement of the due process clause is not satisfied, the order is void. *In re Center Wholesale,* 759 F.2d 1440, 1448 (9th Cir.1985); *In re Moberg,* 112 B.R. 362, 363 (9th Cir. BAP 1990); *In re Blumer* 66 B.R. 109, 113 (9th Cir. BAP 1986), *affirmed* 826 F.2d 1069 (9th Cir.1987).

As noted, it is undisputed that neither Citicorp nor Mercantile received actual notice nor service of process relating to a sale free and clear of the lien. In this respect, the question is therefore presented whether the trustee's notice to Galvan can constitute an acceptable substitute for procedural notice requirements so as to save the order authorizing the sale from constitutional due process concerns.

■ Rule 7004(b) does not authorize service of process by service on a defendant's attorney, unless the attorney has an agency relationship to the corporation. *In re Honigman,* 141 B.R. 76, 78 (Bankr.E.D.Pa.1992) (service of foreign corporation by mailing summons and complaint to law firm was proper service where firm represented corporation in main bankruptcy case); *In re Reisman,* 139 B.R. 797, 800–01 (Bankr. S.D.N.Y.1992) (attorney's notice of appearance does not provide explicit authority to receive process, but may provide implicit authority where defendant takes active role in case); *cf. Maldonado v. Ramirez,* 757 F.2d 48, 51 (3rd Cir.1985) (general rule is that attorney's representation of a party in one action does not make the attorney an agent of the party in an unrelated case). Service on Citicorp's attorneys of record in the McConnell case (Crosby & Gladner), who had a relation to the property, may have sufficed in this instance. Notice to attorney Galvan, however, even though he may have represented Citicorp in other matters unrelated to the property, was not sufficient.

The court below determined that notice to Galvan was sufficient because Galvan "should have" either returned the notice to the trustee or forwarded it to Citicorp. This reasoning inverts a litigant's obligation to provide notice to interested parties by transferring this duty from the party responsible for proper service to the party who was improperly served. The court's conclusion is particularly questionable here because the trustee knew the identity of Crosby & Gladner, coun-

---

7. Pursuant to § 363(f), a sale under § 363(b) may transfer the property free and clear of liens provided one of five listed circumstances is present:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate interest of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.
>
> 11 *U.S.C.* § 363(f).
>
> The issue here is whether there was consent or non-opposition by Citicorp. If not, none of the other elements are present and sale of the lien would be impermissible.

sel who represented Citicorp in the McConnell case, which at least had some connection with the instant proceeding. No evidence was presented that service on Galvan was based on knowledge by the trustee that Galvan had displaced Crosby & Gladner or was otherwise authorized to act for Citicorp in the McConnell or Ex–Cel cases.

As indicated above, service on unauthorized counsel did not provide notice. The court's finding that the mailing of notice to an unrelated party satisfied due process concerns is clearly erroneous.

Appellees rely on *In re Edwards*, 962 F.2d 641 (7th Cir.1992), in which the court balanced the equities of a junior lienor without notice, whose lien was dissolved in a sale, and the good faith purchaser at a § 363 sale. In ruling in favor of finality of bankruptcy sales and the equities favoring the good faith purchaser, the court held that, while lack of notice creates a jurisdictional defect, it does not necessarily result in a void order. The court, at the outset, summarized its ruling, stating:

> The bona fide purchaser at a bankruptcy sale gets good title. That principle, although qualified as we shall see, decides this appeal, in which the specific issue is the validity of a judicially approved sale of a portion of a bankrupt estate without notice to one of the debtor's secured creditors.

962 F.2d at 642.

The court ruled, without qualification, that a sale free and clear of liens, held without notice to one of the property's lienholders, need not be void. As indicated, this is not only contrary to the *Center Wholesale* case, but it is contrary to *Mullane*, which was cited by *Center Wholesale* as follows:

> The Court [referring to *Mullane*] later explained that "[t]he purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an 'impending hearing.'" *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 1563, 56 L.Ed.2d 30 (1978) (footnote omitted). Owens–Corning claims that Center's mailgram notice, received one day before the hearing, came too late and pro-

vided insufficient information to permit Owens–Corning adequately to prepare and present its objections. We agree.

759 F.2d at 1448.

In its analysis, the court in *Edwards* discounted a statement in *Collier on Bankruptcy*, which states, "Section 363(m) will not, however, protect a party buying from the trustee in a sale free and clear of liens where no notice is given to the lien holder. Such a purchaser will be held to have purchased subject to the lien." Lawrence P. King, 2 *Collier on Bankruptcy* ¶ 363.13 at p. 363–43 (15th ed. 1994). *Edwards* criticized this statement, indicating that the treatise made no effort to reconcile it with the competing policy of finality and noting that the main strut of *Collier*'s analysis was a decision of the Supreme Court that long antedated both § 363(m) and Rule 60(b), *Ray v. Norseworthy*, 90 U.S. (23 Wall) 128, 23 L.Ed. 116 (1874). *Norseworthy* considered a case where a bankruptcy court ordered certain:

> mortgaged premises to be sold, and directed that the mortgages should be canceled and that the property should be sold free from incumbrance, rendering to the parties interested their respective priorities in the proceeds[.]

90 U.S. at 134.

The lien of the first mortgage was discharged, but the unnotified mortgagee was not paid. The Court held that the purchaser did not acquire absolute title, stating:

> Secured creditors in such a proceeding must have due opportunity to defend their interests and consequently must be properly notified and summoned to appear for that purpose.
>
> .        .        .        .        .
>
> Concede to the fullest extent the powers of the bankrupt court to do everything specified in the Bankrupt Act, still it is clear that the mortgage and privilege of the petitioner could not be canceled and displaced without notice nor without an opportunity to be heard, nor could the proceeds of the sale be adjudged to a junior mortgagee with or without notice, unless for some cause other than what is dis-

closed in the record. [Footnote omitted.] Notice in some form must be given in all cases, else the judgment, order, or decree will not conclude the party whose rights of property would otherwise be divested by the proceeding. [Footnote omitted.]

No man is to be condemned without the opportunity to make a defence, or to have his property taken from him by a judicial sentence without the privilege of showing, if he can, that the pretext for doing it is unfounded.

90 U.S. at 135–36.

Time may have gone by since *Norseworthy* was decided, but its constitutional concerns persist and have been codified in the language of the Bankruptcy Code and Rules discussed above. *Norseworthy* was applied in the case of *In re Fernwood Markets,* 73 B.R. 616 (Bankr.E.D.Penn.1987), where the debtor moved to sell certain real estate out of the ordinary course of business pursuant to § 363. Certain adversary complaints were addressed to various lienors, but one of the complaints was misaddressed, and the lienor did not receive notice of the hearing adjudicating its rights. The court quoted the statement from 2 *Collier on Bankruptcy* ¶ 363.13 referred to above, stating "elementary principles of due process of law require that it receive notice before it may be deprived of its interest in the Debtor's property." 73 B.R. at 620.

■ Based on the analysis in *Center Wholesale* (which dealt with unduly short notice), we conclude that the lack of any notice to Citicorp constituted constitutional lack of due process which could not confer *in personam* jurisdiction on the bankruptcy court to adjudicate Citicorp's property rights. This was *per se* a jurisdictional defect sufficient to result in a void order. We therefore respectfully disagree with *Edwards* to the extent that it allows considerations, such as the exigent needs of the bankruptcy system or the innocence or good faith of third parties involved in bankruptcy sales, to justify departures from due process standards in adjudicating property rights.

Despite the assertion by the appellees that Citicorp slept on its rights or waived its right to object to the sale by its failure to take action in an attempt to stop the sale within the two days between its first warning of the impending sale and the closing, Citicorp had a right to assume that, pursuant to § 363(f), its lien would either be satisfied out of the proceeds of the sale or the sale would not close until its entitlement had been resolved. The secured creditor, confronted with an order of sale and a short closing time, was not required to abdicate its right to notice and a hearing.

CONCLUSION

Because notice to Citicorp was defective, the court lacked personal jurisdiction over Citicorp and therefore could not authorize a sale free and clear of Citicorp's lien. The order is void, and the court abused its discretion by denying Citicorp's motion to set it aside. We therefore reverse that order and REMAND for the court to VACATE its void order and conduct further proceedings to quiet title among the parties consistent with this ruling.

REVERSED.