**In re M & L BUSINESS MACHINE COMPANY, INC., Debtor.**

**Christine J. JOBIN, Trustee, Plaintiff/Appellee,**

v.

**James OTIS, III, Defendant/Appellant.**

**Civ. A. No. 95–K–1704.**

United States District Court, D. Colorado.

Dec. 22, 1995.

Christine J. Jobin, Trustee, Jobin Law Firm, Denver, CO, pro se.

Jerry E. Cardwell, Curtis R. Henry, Cardwell & Associates, P.C., Denver, CO, for defendant.

## MEMORANDUM DECISION ON APPEAL

KANE, Senior District Judge.

Christine Jobin, trustee of the M & L Business Machine bankruptcy estate ("Trustee"), obtained default judgment against the Defendant in the underlying adversary proceeding based on Defendant's failure to answer the Complaint. Defendant moved to quash service of process, or, in the alternative, for relief from judgment, arguing Jobin's attempt to serve him "in care of" his father's company at a Snowmass, Colorado, address obtained from the letterhead of three-year old correspondence failed to satisfy Bankruptcy Rule 7004(b). The bankruptcy court denied the motion from the bench and by minute order, and Defendant appealed. I reverse, vacate the judgment and quash service.

### I. *BACKGROUND*

James Otis, III was an investor in M & L Business Machine Company, Inc. ("M & L"). In the summer of 1993, after M & L declared bankruptcy and was revealed to be a Ponzi scheme, Otis III became one of hundreds of M & L "investors" targeted for preference actions by the Trustee. On October 1, 1993, the Trustee served a copy of the Summons and Complaint by depositing the same in the United States Mail, postage prepaid, addressed to "J. Otis, c/o Otis Company, 1907 Snowmass Creek Road, Snowmass, Colorado, 81654." On June 17, 1994, the Trustee moved for entry of default and default judgment, asserting no response had been filed to the Complaint. The motion was granted by

the bankruptcy court, and on June 10, 1994, judgment was entered against "J. Otis."

At the time of service in October 1993, Otis III was studying for the priesthood at a Franciscan seminary in England. His father, James Otis Jr.—owner of the Otis Company—was living and doing business in Illinois. His sister, Julie Otis, lived in Snowmass. Each of these "J. Otises" denies having received the Summons and Complaint sent by the Trustee on October 1, 1993.[1]

The address used was from a letter Otis III had written M & L Vice President David Parish, M.D., on October 17, 1990. (R. Vol. I, Tab 21, Ex. C.) It appeared in the preprinted letterhead as the address for the Otis Company. The Otis Company held a 35% interest in the limited partnership that owned the property at 1907 Snowmass Creek Road. The property, known as the Lazy O Ranch, was subdivided into 22 lots on which there were several homes. At the time he wrote the Parish letter, Otis III was working as a missionary pilot with a Glenwood Springs, Colorado surgeon in Mexico and, when in Colorado, stayed in one of the homes. He worked with the mission from August 1990 to September 1991, when he left to join the Franciscan Order of Divine Compassion in Monmouth, Illinois.

In the 1990 letter, Otis III notified Parish of his intent to invest in a new M & L account for the "support of missions [Otis III] want[ed] to open," and asked Parish to "let [Otis III] know, or notify the OSO address,"[2] if there were any problems with his intended deposit. *Id.* The Trustee obtained the letter when she came into possession of M & L's investor files in the course of these bankruptcy proceedings. Despite the fact

that the only address on the face of the letter identified as Otis III's was the OSO address, the Trustee sent the Summons and Complaint to the preprinted Otis Company address on the letterhead.

Otis Jr. received a copy of the Order Regarding Entry of Default on or about July 11, 1994. This was the first notice he had received of the matter. On January 3, 1995, he filed a Verified Motion to Quash Service of Process or in the Alternative, Motion for Relief from Judgment. After a hearing, the bankruptcy court granted the motion in part, amending the judgment to clarify that it was Otis III, and not James Otis, Jr. or Julie Otis (Otis III's sister), against whom judgment was entered. (R. Vol. I, Tab 20.) The court did not quash service, however, on grounds it had no affidavit or anything else from Otis III on the adequacy of the Trustee's service. (Rep.Tr. (Jan. 23, 1995) at 13:14–18.)

Otis III asserts he first received notice of the default on July 15, 1994, when he was visiting his father in Illinois from England. After his father's motion to quash was denied, Otis III filed his own Verified Motion to Quash Service of Process or in the Alternative, Motion for Relief from Judgment. After a hearing held on June 27, 1995, the bankruptcy court denied the motion. This appeal ensued.

## II. *STANDARD OF REVIEW*

■ The ruling from which the appeal is taken in this case was made from the bench and reiterated by minute order. There are no written findings of fact to review. Where, as here, review is of a bankruptcy court's legal conclusions, I am required to conduct a

---

1. The Trustee, at page 9 of her response brief, asserts that "[b]y the Appellant's own admission, the Summons and Complaint may have been forwarded to him." Appellee's Resp. at 9 (citing to the Record at Tab 21, Ex. A, p. 2). The document to which the Trustee cites is an affidavit, but it is the affidavit of James Otis *Jr.*, not the Appellant James Otis III. As if this misrepresentation were not sufficiently egregious, the Trustee's characterization of the "admission" is grossly overreaching. The affidavit states that "mail generally addressed to 1907 Snowmass Creek Road is gathered by the employees of the Homeowners' Association and is either distributed to the addressee, forwarded to the addressee or

discarded," R. Vol. I, Tab 21, Ex. A at ¶ 5, but goes on to state unequivocally that Otis Jr. "never" received the copy of the Summons and Complaint mailed by the Trustee in October 1993. *Id.* at ¶ 6.

2. The "OSO address" was the Illinois address of Otis III's agent, and was typed at the top of the body of the letter as the return address for James Otis III. "OSO," Otis III explains in his affidavit in support of his motion to quash, was an acronym for "Otis Son One." (R. Vol. I, Tab 21, Ex. B at ¶ 3.)

"*de novo* review of the record and reach an independent legal conclusion." *See In re Kirkland*, 181 B.R. 563 (Bankr.D.Colo.1995) (citing *In re Davidovich*, 901 F.2d 1533, 1536 (10th Cir.1990)).

## III. *DISCUSSION*

The issue on appeal is whether service of the preference action by addressing the Summons and Complaint to "J. Otis, c/o the Otis Company" at the Ranch complies with Bankruptcy Rule 7004(b)(1). The bankruptcy court ruled it did. Conceding the Parish letter from which the Trustee obtained the service address "is not the model of clarity," the court nevertheless construed it to "indicate that [at the time the letter was written] [Otis was] still at the Snowmass address." Rep.Tr. (June 27, 1995) at 18:8–9.[3] The court relied on Otis III's "admission" in his affidavit that he "was a resident [of Snowmass] from August '90 to mid-September of '91," and concluded Otis had failed to present sufficient evidence to convince the court he had intended to "change [his] legal residence" when he "[went] off to school" on a "temporary" basis. *Id.* at 18:10–25. I find the bankruptcy court's conclusion clearly erroneous on several grounds.

### A. *The Law*

Should a court purport to render a personal judgment against a defendant without having jurisdiction over him, the judgment will be treated as void. In the historically leading case of *Buchanan v. Rucker*, 9 East 192 (1808), Lord Ellenborough uttered his famous dictum, "Can the Isle of Tobago pass a law to bind the rights of the whole world? Would the world submit to such an assumed jurisdiction?" There, the defendant had never been in or on Tobago and so far as it appears, had never otherwise been subject to its courts. Summons in that action had ostensibly been served by nailing a copy to the Tobago court house door, pursuant to a local law which by its terms was applicable only or primarily to owners of local plantations. The similarities in the instant case are striking.

Virtually all legal authorities agree that reasonable notice and opportunity to appear and defend must be afforded the defendant. The Federal Rules of Civil Procedure generally require personal service. *See* Fed.R.Civ.P. 4. If a defendant does not acknowledge the receipt of pleadings sent by mail, then plaintiff must provide personal service. *Id.* In recognition of the time constraints in bankruptcy proceedings and to insure simple and expeditious service of defendants to such proceedings, Congress enacted Bankruptcy Rule 7004(b) to allow for service by mail alone. As it pertains to this case, service under the Rule may be made by mailing a copy of the summons and complaint "to the individual's dwelling house or usual place of abode" or "to the place where the individual regularly conducts a business or profession." Bankr.R. 7004(b)(1). Acknowledgement of receipt of service is not required.

"[S]tatutes in derogation of the common law" must be strictly construed. *See Farmers Group, Inc. v. Williams*, 805 P.2d 419, 423–24 (Colo.1991). With respect to Rule 7004, courts have observed that "nationwide service of process by first class mail is a rare privilege" that can drastically reduce the costs and delay of litigation. *In re Pittman Mechanical Contractors, Inc.*, 180 B.R. 453, 456 (Bankr.E.D.Va.1995) (citing *In re Schoon*, 153 B.R. 48, 49 (Bankr.N.D.Cal. 1993)). As a privilege, however, "it is not to be abused or taken lightly." *Id.* at 456–57.

An essential requirement of due process is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust, Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In light of the comparatively lenient procedure in bankruptcy, persons effecting service must provide correct notice in accord with the Rules. *In re Pittman* at 457 (applying Rule 7004(b)(3) and citing *In re Braden*, 142 B.R. 317 (Bankr. E.D.Ark.1992) and *Schoon*). Thus, strict compliance with Rule 7004 serves to protect

---

3. Because the bankruptcy court's interpretation of the letter is central to the issues raised on appeal, the letter is reproduced and attached as Appendix A to this opinion.

due process rights as well as to assure bankruptcy matters proceed expeditiously.

### B. *Service in this Case*

Construing Rule 7004(b)(1) strictly in this case, I find the Trustee did not comply with its provisions.

#### 1. *Use of "J. Otis"*

■ The Trustee addressed the Summons and Complaint to "J. Otis" knowing, based on the 1990 Parish letter and the other M & L documents in her possession at the time, that it was James Otis III who had invested in M & L. Given the reference to "my father" in the letter, it was unreasonable to have addressed the Summons and Complaint in a manner that encompassed both.

The Trustee's unjustified failure to identify Otis III specifically is sufficient by itself to require that service be quashed in this case. The failure resulted in the needless involvement of James Otis, Jr., requiring him to retain counsel to clear his name and thereby incur unwarranted legal expenses. It also protracted these proceedings unnecessarily. The Trustee's insouciant approach[4] to service under Rule 7004 turned a process intended "drastically [to] reduce costs and delay in litigation" into one having the opposite effect. *See In re Pittman*, 180 B.R. at 456.

#### 2. *Proper address*

Of even greater legal significance, the only place the Summons and Complaint could properly have been mailed under Rule 7004(b)(1) was (1) to Otis III's "dwelling house or usual place of abode"; or (2) to the "place where [he] regularly conduct[ed] business." The Trustee has maintained throughout these proceedings that she was attempting to serve Otis III at the former, hence the argument that Otis III's "temporary" depar-

ture for the seminary did not change his "legal residence" from the Snowmass address where service was attempted.

■ As an initial matter, the Trustee sent the Summons and Complaint to J. Otis "in care of" a business. This fact alone belies the assertion that she was attempting to serve Otis III at home. While it later came to light (through Otis III's 1995 affidavit disputing the Trustee's assertion that his permanent residence was in Snowmass) that Otis III had lived in one of the Lazy O Ranch houses sporadically from 1990 to 1991, there is nothing in the record to indicate the Trustee knew of this fact at the time of service.

■ Even if she had known Otis III was "residing" temporarily at the Otis Company address at the time he wrote the Parish letter, that knowledge would not transform the notice issue here into a question of whether Otis's departure for the priesthood changed or did not change his "legal residence."[5] Strict compliance with Rule 7004 precludes equating the term "residence" with "dwelling house or place of abode."

■ Under the Bankruptcy Code, a debtor's residence "may be nothing more than a place of sojourn." 3 *Collier on Bankruptcy,* § 522.06 at 522–28 (15th ed. 1987) (comparing "residence" and "domicile" as used in the Code). One does not have to intend to remain there, to return there when one is absent, or to exercise one's political rights there. *See id.* While the term "dwelling house or usual place of abode" is not defined precisely, the majority of cases interpreting it focus on its literal meaning. *See* 4A C. Wright & A. Miller, *Federal Practice and Procedure,* § 1096 at 73–75 (2d ed. 1987) (footnotes and citations omitted).

---

4. Had the Trustee simply sent the Summons and Complaint to both the Otis Company and OSO addresses that appeared on the Parish letter, Otis III would have received notice.

5. At the hearing on Otis III's motion to quash, the bankruptcy court blithely assumed 1907 Snowmass Creek Road was, in fact, Otis III's "legal residence" in October 1990, and concluded that "[w]hen a party has a permanent residence and goes off to a school, that is not a change in legal residence." Rep.Tr. (June 27,

1995) at 18:21–22. As an initial matter, there was no attempt by the Trustee to show the Lazy O Ranch house was Otis III "legal residence" in 1990, and the facts viewed in their entirety preclude such a finding. In addition, equating the monastic life—with its permanent vows of poverty, chastity and obedience—and the isolation of a seven-year seminary program in a foreign country with "go[ing] off to a school.... temporar[ily]" bespeaks a naiveté so artless as to make comparison an impossible undertaking.

A person's "dwelling house or usual place of abode" is determined at the time service is attempted. *Krasnov v. Dinan*, 339 F.Supp. 1357, 1358 (E.D.Penn.), *aff'd*, 465 F.2d 1298 (3d Cir.1972). The inquiry is fact intensive. *See* Wright & Miller, *supra*, at p. 73–74 (2d ed. 1987) and 20 (1995 Pock.Part). Essentially, it is the place, at the time of service, at which one could reasonably expect to find the individual sought living.

The record in this case fails entirely to show with any degree of persuasion that the preprinted "Otis Company" address on the 1990 letterhead was the place Otis III could reasonably be expected to be found three years later.[6] What the record does show, as the Trustee conceded at oral argument, is that Otis III "moved around a lot" before he entered the seminary in 1993, working on various religious missions and engaging in theological studies. It shows Otis III occupied one of the Lazy O Ranch houses at the Otis Company address sporadically for a period of one year while he was flying as a missionary pilot in and out of Chihuahua, Mexico. The record also shows Otis III had no ownership interest in the Lazy O Ranch house, and that he had not been to the house for at least two years before service was attempted there.

Considering the totality of the undisputed evidence relevant to this matter, it is clear James Otis III was not properly served and that default judgment should not have been entered against him. The service of the Summons and Complaint in this case to "J. Otis, c/o The Otis Company" in Snowmass, Colorado failed to comply with the provisions for service set forth in Bankruptcy Rule 7004(b)(1) and failed entirely to provide James Otis III with notice reasonably calculated to apprise him of the action or provide

him an opportunity to present a defense to the Trustee's claims. Accordingly,

The Order of the bankruptcy court denying Otis III's motion to quash service is REVERSED, and the order entering default judgment against Otis III is VACATED. The cause against James Otis III is dismissed.

### APPENDIX A

James Otis III
OSO Account
400 Skokie Blvd. Suite 250
Northbrook, Il 60062

October 17, 1990

David D. Parrish M.D.
Vice President
M & L Business Machine CO. INC.
1333 W. 120th suite 210
Westminster, CO. 80234

Dear David,

It was good to see you in Aspen. Thank you again for Breakfast and the time to talk. I certainly hope business troubles are working out as you would hope to direct.

I would like this letter to serve as advance notice, that M & L requests, that I want to deposit both principal and interest checks, due Nov. 4, 1990; $60,000.00 and $14,400.00 respectively. I do not have the specific check numbers with me.

It is important that in setting up a new account, and books for myself and the Christian foundation to support missions I want to open, that I start with that principal in the new account before we proceed with any new contracts and reinvestment. This should also give me the initiative to follow through quickly. It is probably also time that I relieve my Dads office the burden assumed in keeping my account and check writing while I've been involved with Youth with a Mission

---

**6.** The Trustee claims she relied on the language "let me know, or notify the OSO address" in the Parish letter to indicate Otis III "was physically in Colorado" in 1990 and that the Snowmass address for the Otis Company set forth on the Parish letter letterhead was Otis III's last known "legal residence." Appellee's Resp. at 2, 4–5. The assertion is dubious at best. It assumes, without foundation, that "let me know" in the letter meant "let me know, in writing, in care of the Otis Company address on the letterhead." It is equally likely that Parish had Otis III's phone number and "let me know" meant "let me know by phone, or write me at the address I have indicated is my return address" or, because Parish is an M.D., that Otis III could be reached through the Glenwood Springs surgeon.

and unable to do both. It has caused some problems for them and my relationship there.

Please let me know, or notify the OSO address, if there will not be sufficient funds available, or any problem with the deposit for M & L at this time. I am very grateful for the opportunity you've generously allowed to date for this investment. It has been a true blessing to many lives including mine.

In Christian service

Warmly,

/s/ James Otis III

James Otis III

cc: Harry Christensen/ OSO