**In re ULTRASONICS, INC., Debtor.**

**Ultrasonics, Inc., Plaintiff,**

v.

**Keith Eisberg and John and Jane Does I through IX, Defendants.**

**Nos. 99–03326, 00–6056.**

United States Bankruptcy Court, D. Idaho.

Nov. 6, 2001.

---

5.  For a host of reasons, the Court has re-served judgment on any such sale.

858

Joseph M. Meier, Cosho, Humphrey, Greener & Welsh, P.A., Boise, Idaho, for Ultrasonics, Inc., plaintiff.

D. Blair Clark, Ringert Clark Chartered, Boise, Idaho, for Keith Eisberg, defendant.

## MEMORANDUM OF DECISION

TERRY L. MYERS, Bankruptcy Judge.

## BACKGROUND AND RELEVANT FACTS

The plaintiff, Ultrasonics, Inc. ("Ultrasonics") filed a voluntary petition for chapter 11 relief before this Court. It thereafter filed a complaint on February 9, 2000 commencing the instant adversary proceeding against Keith Eisberg ("Defendant"). That initial complaint and related summons were served by regular and certified first class mail upon Defendant at 11601 Moorpark, North Hollywood, California 91602. See Doc. No. 2. Ultrasonics filed a First Amended Complaint on July 28, 2000. See Doc. No. 4. This First Amended Complaint was served in the same manner as was the initial complaint. See Doc. No. 5.

In September, Ultrasonics sought entry of default. An Affidavit of Plaintiff's counsel was filed on September 15. See Doc. No. 7. Counsel there averred that the First Amended Complaint and summons had been served on Defendant at the Moorpark address by first class mail and that this mail had not been returned. Id., at p. 2, ¶ 2.a. Counsel also testified that the same were served by certified mail with a return receipt requested, and that this mail was received and the receipt executed by a "C. Wentzel." Id., at p. 2, ¶ 2.b and Exhibit A. Additionally, a "courtesy copy" was mailed to the attorney in Los Angeles who had represented Defendant in regard to the disputes between Ultrasonics and Defendant prior to bankruptcy. Id., at p. 2, ¶ 2.c.

Default was entered on September 18, 2000. See Doc. No. 8. The Court required a "prove-up" hearing which was held on September 21, 2000. Default Judgment was entered on September 22, 2000. See Doc. No. 10.

On July 9, 2001, Defendant moved to set aside the default and the default judgment. See Fed.R.Bankr.P. 7055 and 9024; Fed.R.Civ.P. 55(c) and 60(b). This motion, and Plaintiff's opposition, first came on for hearing in August. The Court concluded that the matter should be set over for a further evidentiary hearing, which ultimately occurred in late October 2001. At the conclusion of the hearing and following argument, the matter was taken under advisement.

The Court has reviewed and considered the record before it which includes the verified First Amended Complaint, all affidavits filed, and the testimonial and documentary evidence introduced at hearing. This decision constitutes the Court's findings and conclusions on the contested matters presented. Fed.R.Bankr.P. 7052, 9014.

## DISCUSSION AND DISPOSITION

The gravamen of Defendant's motion is that the default and judgment should be set aside because he was never served with the summons or complaint, and became aware of the litigation only after a foreign judgment was recorded. He contends that he has never resided nor regularly conducted a business at the Moorpark address in North Hollywood, California. He asserts that this address is for a personal residence of a business acquaintance,

Chris Wentzel.[1]

Issues surrounding vacation of default judgments were thoroughly analyzed in *TCI Group Life Insurance Plan v. Knoebber*, 244 F.3d 691 (9th Cir.2001), which addressed operation of Rule 60(b), incorporated for bankruptcy purposes by Fed. R.Bankr.P. 9024, in this context.

■■■ *TCI* acknowledged that there is a "balance between the overriding judicial goal of deciding cases correctly, on the basis of their legal and factual merits, with the interest of both litigants and the courts in the finality of judgments." *Id.* at 695. The question of relief from a default judgment is committed to the discretion of the courts and, as a general matter, the provisions of Rules 55(c) and 60(b) are "remedial in nature and ... must be liberally applied." *Id.* at 696, quoting *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir.1984). In recognition of the principal that cases should, when possible, be decided on the merits, the Court stated:

> ... [W]here there has been *no* merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute.

*Id.* However, the Court also stated:

> This does not mean, of course, that the moving party is absolved from the burden of demonstrating that, in a par-

ticular case, the interest in deciding the case on the merits should prevail over the very important interest in the finality of judgments.

*Id. See also, Pena v. Seguros La Comercial, S.A.,* 770 F.2d 811, 814 (9th Cir.1985) (addressing the importance of the principal of finality "which should not lightly be disregarded.")

■■■ *TCI* recognizes and holds that three factors govern the vacation of defaults and default judgments under Rules 55(c) and 60(b). They are:

> whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff.

*Id.* (citing *Falk,* 739 F.2d at 463 and additional cases). The party seeking to vacate the judgment bears the burden of establishing that such factors support that relief. *Id.*[2]

A great deal of evidence, mostly conflicting, was presented in regard to these three factors. But the first and foremost question which must be resolved is whether culpable conduct of Defendant led to the default.

■■ As *TCI* notes, "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Id.,* at 697, citing *Alan Neuman Prods.,*

---

**1.** Wentzel is, among other things, the person who was retained by Defendant to "repossess" an aircraft (N–172D) which lies at the heart of the dispute between the parties. *See, e.g.,* Exhibit E. Despite this "agency" relationship, Ultrasonics stops short of contending that service on Wentzel or at his address satisfies the requirements of Fed.R.Bankr.P. 7004(b)(8). There is no evidence that Wentzel was an agent "authorized by appointment or by law to receive service of process" on behalf of Defendant.

**2.** Neither party cited or discussed *TCI,* though Ultrasonics did address the three elements identified therein. Defendant, in briefing, cited decisions from the 1980's from other circuits, and his attorney at hearing also argued that relief was proper upon a showing of lack of service and meritorious defense, expressly denying that the third test (prejudice to plaintiff) existed.

*Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir.1988). *See also, Pena,* 770 F.2d at 815. Did Defendant here receive such notice through service under the Rules?

Rule 7004(b)(1) states as follows:

**(b) Service by First Class Mail.** Except as provided in subdivision (h), in addition to the methods of service authorized by Rule 4(e)–(j) F.R.Civ.P., service may be made within the United States by first class mail postage prepaid as follows:

(1) Upon an individual other than an infant or incompetent, by mailing a copy of the summons and complaint to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession.

■ The evidence before the Court establishes that the Moorpark address is not the Defendant's "dwelling house or usual place of abode." No evidence was presented to indicate that Defendant lived with Wentzel at that address on either a sporadic or regular basis. Defendant's residence address appears, from the weight of the present record at least, to be a slip at a marina in Marina del Rey, California.[3]

Ultrasonics' primary contention is that the Moorpark address qualifies as a "place where the [Defendant] regularly conducts a business or profession." In large part, this contention is based upon Exhibit A, an "aircraft registration application" form signed by Defendant and completed either by Defendant or someone on his behalf. This form indicates that Defendant was the "applicant" seeking a change of title on the subject aircraft, N–172D. This application was signed in April, 1999 and filed with the Federal Aviation Administration ("FAA") a month later. Under the heading "ADDRESS (permanent mailing address for first applicant listed)" on this form, Defendant listed the address of 11601 Moorpark, North Hollywood, California 91602. But Defendant also listed under that same heading the address of P.O. Box 9667, Marina del Rey, California 90295. The FAA, for reasons not established of record, used the P.O. Box in Marina del Rey on the certificate of aircraft registration it issued. *See* Exhibit B.

■ Though Defendant listed the Moorpark address as a "permanent mailing address" on Exhibit A, the pertinent question is whether or not it qualifies as a "place where [Defendant] regularly conduct[ed] a business or profession." Rule 7004(b)(1). Upon the entirety of the record, the Court concludes that this proposition was not proven.

Service by mail is a special aspect of bankruptcy litigation, Rule 7004 having been enacted by Congress "[i]n recognition of the time constraints in bankruptcy proceedings and to insure simple and expeditious service of defendants to such proceedings." *Jobin v. Otis (In re M & L Business Machine Company, Inc.),* 190 B.R. 111, 115 (D.Colo.1995). *Jobin* notes further:

An essential requirement of due process is "notice reasonably calculated, under all the circumstances, to apprise interested parties of the action and afford them an opportunity to present their

---

**3.** It appears that Defendant attempted to avoid using or disclosing a physical address for his residence, instead referring consistently to a post office box in Marina del Rey. In fact, Ultrasonics contends that Defendant has deliberately done so in an attempt to avoid being located and served. But the question material under Rule 7004(b)(1) is whether service was in fact made at "the individual's dwelling house or usual place of abode" and not whether a defendant attempted to conceal that address, for reasons of evasion of service or otherwise.

objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). In light of the comparatively lenient procedure in bankruptcy, persons effecting service must provide correct notice in accord with the Rules. *In re Pittman [Mechanical Contractors, Inc.,* 180 B.R. 453] at 457 (applying Rule 7004(b)(3) and citing *In re Braden,* 142 B.R. 317 (Bankr.E.D.Ark.1992) and [*In re] Schoon* [153 B.R. 48 (Bankr.N.D.Cal. 1993) ] ). Thus, strict compliance with Rule 7004 serves to protect due process rights as well as to assure bankruptcy matters proceed expeditiously.

*Id.,* 190 B.R. at 115–16. *See also, In re Ex–Cel Concrete Co.,* 178 B.R. 198, 202–04 (9th Cir. BAP 1995). Thus, Rule 7004(b)(1) requires that service be made at an address where the defendant regularly conducts a business or profession if this is to be used as an alternative to service on that defendant at his home.

Not every address where a defendant has at one time or for some purpose conducted business will necessarily suffice. The use of the adjective "regularly" connotes more than that.[4] The evident intent is to ensure that service at such a business address has the same sort of likelihood of actually apprising the defendant of the action as would service at his dwelling house or usual place of abode, and is designed to comport with Constitutional considerations of due process.

The Moorpark address, whether Wentzel's residence address or not, is clearly one that Defendant at times used in his business affairs. Defendant placed it upon the FAA application, Exhibit A, even though he also listed another mailing address in California at the same time. Wentzel was the agent hired by Defendant to "repossess" the airplane. Apparently Wentzel was also authorized to act on Defendant's behalf in attempting to dispose of the putative collateral. *See* Exhibit 11 and Exhibit E.

But even though the address on Moorpark in North Hollywood was therefore shown to be an address which Defendant had utilized, it was not established that this address was one at which Defendant "regularly" conducted a business or profession. The Court concludes that the service of the First Amended Complaint did not satisfy Rule 7004(b)(1).[5]

Ultrasonics argues that other factors should be considered in evaluating the "culpability" of Defendant's conduct, even if the address used was not precisely what the Rule required.[6] However, in light of the failure to prove compliance with Bankruptcy Rule 7004(b)(1), the Court concludes that the inquiry must shift to Rule 60(b)(4).

�no *Mountain National Bank v. Brackett (In re Brackett),* 243 B.R. 910

---

**4.** "Regularly" is defined as "in a regular manner; at regular times or intervals." In turn, "regular" is defined as "usual; customary" or "consistent or habitual in action." *See* Webster New Twentieth Century Dictionary, 2d ed., at 1522.

**5.** The Court appreciates that additional notice was sent to Defendant's California attorney, and also that it is possible Defendant's business and personal acquaintance, Wentzel, may have alerted Defendant. However, supposition as to receipt and forwarding of notice does not in and of itself comply with Rule

7004(b)(1). *Accord, Ex–Cel Concrete,* 178 B.R. at 203–04.

**6.** For example, Ultrasonics raised issues regarding Defendant's credibility. This was in large part a result of Defendant's equivocation or lack of recall on several points during cross examination, while his testimony about other facts or events was specific and detailed. Evidence concerning Defendant's general reputation for honesty was less significant.

(Bankr.N.D.Ga.2000), considered the question of whether a default and default judgment could stand if the defendant had not been properly served. The Court analyzed the issue under Rule 60(b)(4) which allows for relief from a "void" judgment, and it focused on the fact that failure of proper service of a summons and complaint eliminates the necessary *in personam* jurisdiction required before judgment can be entered. 243 B.R. at 913–15. If the defaulted party was not properly served, such jurisdiction was not obtained and the default judgment is void. *Id.* at 913, citing, among other cases, *Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 851 (9th Cir.1992). According to *Brackett*, a judgment can be either characterized as valid or void, but there is no middle ground. 243 B.R. at 914. The Panel in *Ex–Cel Concrete* similarly held:

> If the notice requirement of the due process clause is not satisfied, the order is void. *In re Center Wholesale*, 759 F.2d 1440, 1448 (9th Cir.1985); *In re Moberg*, 112 B.R. 362, 363 (9th Cir. BAP 1990); *In re Blumer*, 66 B.R. 109, 113 (9th Cir. BAP 1986), *affirmed* 826 F.2d 1069 (9th Cir.1987).

178 B.R. at 203.

*Brackett* further recognized:

> Application of subdivision (4) is significantly different than application of the other five subdivisions of Rule 60(b).... [F]or subdivisions (1), (2), (3), (5), and (6) of the rule, trial courts have broad discretion when considering motions to set aside default judgments.... If, however, a judgment is void, thereby triggering Rule 60(b)(4), the inquiry ends. Stated differently, trial courts lack discretion when considering a Rule 60(b)(4) motion. If a judgment is void, no proof is required that the defaulting party has a meritorious defense or that the other party will not be prejudiced by having the judgment set aside.

243 B.R. at 914, n. 7 (citations omitted). *Accord, Campbell v. Castelo*, 105 B.R. 19, 21 (9th Cir. BAP 1989) (addressing an untimely served summons, and holding that "[e]ven receipt of actual notice does not remedy the technically defective service through which the court fails to obtain personal jurisdiction").

While Rule 60(b)(4) was not specifically cited or referred to by Defendant, the Motion generally cited Rule 60(b) and was based upon an alleged lack of proper service. The Court concludes that, in light of the authorities discussed above and because valid service under Rule 7004(b)(1) was not established, the necessary prerequisite for application of Rule 60(b)(4) exists.[7]

**CONCLUSION**

Based upon the foregoing, the Motion of Defendant to set aside default and default judgment under Fed.R.Civ.P. 55(c) and 60(b) and Fed.R.Bankr.P. 7055 and 9024 shall be granted. Defendant shall provide an appropriate form of order. Any and all other issues which may attend this matter are expressly reserved, and the Court expresses no opinion thereupon.

7. This determination should not be construed as a criticism of the conduct of Ultrasonics. There is nothing to indicate that Ultrasonics attempted to obtain a judgment while intentionally depriving Defendant of notice. To the contrary, Ultrasonics made significant efforts to serve Defendant and apprise him of what it sought in the adversary proceeding. Its reliance upon the one physical address it could locate, under the facts presented at hearing, was understandable even if that address ultimately did not withstand scrutiny under the provisions of Rule 7004(b)(1).