**TCI GROUP LIFE INSURANCE PLAN, Life Insurance Company of North America, Plaintiffs–counter–defendants–Appellees,**

v.

**Janet KNOEBBER, Defendant-cross-defendant-Appellant,**

**Kathleen Knoebber, Defendant-counter-claimant-cross-claimant–Appellee.**

**Nos. 98–17122, 99–15070.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 16, 2000

Filed March 26, 2001

George P. Kickliter, Tampa, Florida, for the defendant-cross-defendant-appellant.

Jeffrey Lewis, Deene Goodlaw, Teresa S. Renaker, Sigman, Lewis & Feinberg, Oakland, California, for the defendant-cross-claimant-appellee.

Before: KLEINFELD, TASHIMA and BERZON, Circuit Judges.

BERZON, Circuit Judge:

On the merits, this case concerns an intra-family dispute over the proceeds of a $50,000 life insurance policy. When Janet Knoebber failed to plead in response to the complaint or the cross-claim, the district court entered a default judgment against the deceased's wife in favor of his mother. The district court denied the wife's motion to vacate the default judgment. We hold, in accord with the long-standing principle that default judgments are disfavored, that the district court abused its discretion in failing to set aside the default and reach the merits. In the course of doing so, we clarify the meaning of the "culpability"

prong of the well-established standard governing the setting aside of default judgments.

## I. Background

Thomas Knoebber died of lung cancer on August 16, 1997, at the age of 40, leaving his wife, Janet, and a two-year-old son. Thomas' death left Janet distraught. She sought psychiatric treatment, and under her psychiatrist's care was taking powerful antidepressants.

In July 1998, Janet completed the sale of her home in Livermore, California, and moved to Tampa, Florida, with her son and her eight-year-old daughter from a previous marriage to begin anew. It was during the time that Janet was preparing to move, moving, and setting up a new home and new life in Florida that the events that gave rise to the default judgment, and to this appeal, took place.

Thomas was an employee of Tele–Communications, Inc. (TCI), and a participant in the TCI Group Life Insurance Plan (the Plan). The Life Insurance Company of North America (LINA) issued the group life insurance plan to TCI. The Plan's basic life insurance policy provided a $123,000 benefit to be paid to Thomas' designated beneficiary in the event of his death. Janet was the designated beneficiary of the basic life insurance policy. Accordingly, upon Thomas' death, the Plan paid the $123,000 basic benefit to Janet.

Four years before he married Janet, Thomas had purchased an additional voluntary life insurance policy worth $50,000. At the time, he designated his mother, Kathleen Knoebber, as the beneficiary in trust for his two children from a previous marriage. Janet asserts that after she and Thomas were married, Thomas notified the Plan administrator of his desire to designate Janet as the beneficiary. As far as the record shows, however, the Plan never received a signed designation-of-beneficiary form to that effect.

Upon Thomas' death, both Janet and Kathleen made claims on the Plan for the $50,000 voluntary life insurance benefit. Janet based her claim on Thomas' intent to designate her as his beneficiary, and on her interest in the benefit under California community property law. Because of the conflicting claims, LINA and the Plan filed an interpleader action in District Court on April 15, 1998 to determine who should receive the $50,000 benefit. Although Janet was served with the summons and complaint on May 12, she did not respond.

When Kathleen received the interpleader summons and complaint, she contacted the interpleader plaintiffs' counsel and entered into a stipulation extending her time to respond to the complaint until June 19. On June 18, Kathleen's counsel telephoned Janet, who explained she had not retained counsel and did not know what she was going to do about the litigation. The following day, Kathleen filed her answer, counterclaim, and cross-claim against Janet. Kathleen's counsel mailed Janet a copy of the answer, counterclaim, and cross-claim, asked that Janet waive personal service, and suggested that Janet contact the Alameda County Bar Association's referral service for help in obtaining a lawyer. Janet did not respond to this letter.

Janet was personally served with Kathleen's answer, counterclaim, and cross-claim on July 6, 1998 and had 20 days to file an answer to the cross-claim or otherwise plead. In the middle of the time period for answering the cross-claim, on July 17, Janet moved with her children to Tampa. She did not answer the cross-claim.

Two days after Janet's answer was due, Kathleen moved for an entry of default against Janet, and the clerk entered the default the following day. Almost immediately, on August 4, Kathleen moved for a default judgment, serving Janet at her new address in Florida. A hearing on Kathleen's motion was set for September 15.

Janet failed to respond to the motion within 21 days, as required by the District Court's local rules, *see* N.D. Cal. Civil L.R. 7–3(a), so the District Court, on September 4, granted the default judgment against Janet. Four days later—before the date set for the hearing, and before she learned that the request for the default judgment had been granted—Janet approached a local lawyer in Tampa for advice. That lawyer filed a Notice of Appearance of Counsel with the District Court on September 11 (but not, apparently, a motion to appear *pro hac vice*), and proceeded to engage local counsel and file a motion to appear *pro hac vice*. Meanwhile, on September 18, the District Court entered the default judgment and directed the Plan to disburse the proceeds of the $50,000 voluntary life insurance policy to Kathleen.

Janet filed a motion to set aside the default judgment under Fed.R.Civ.P. 60(b) on October 15, accompanied by declarations from Janet and her attorney reciting the circumstances summarized above. The district court denied the motion on December 8, without explanation. Janet appeals the denial of her motion to set aside the default.

■ The district court had jurisdiction over the underlying interpleader action under ERISA, 29 U.S.C. § 1132, *see Aetna Life Ins. Co. v. Bayona,* 223 F.3d 1030, 1033–34 (9th Cir.2000) (ERISA interpleader brought by fiduciary is cognizable cause of action), and over Kathleen's cross-claim, which is the subject of this appeal, *see Cripps v. Life Ins. Co. of North America,* 980 F.2d 1261, 1266–67 (9th Cir.1992)

(person who claims to be the beneficiary of an ERISA plan has a cause of action under 29 U.S.C. § 1132(a)(1)).[1]

## II. Rule 60(b)'s Standards for Vacating Default Judgments

■ Motions to vacate a default judgment, like the one in this case, are cognizable under Fed.R.Civ.P. 60(b). Rule 60(b)(1), the subsection here pertinent, grants district courts discretion to relieve a party from a judgment or order for reason of "mistake, inadvertence, surprise, or excusable neglect," provided that the party moves for such relief not more than a year after the judgment was entered.[2] As such, Rule 60(b)(1) guides the balance between the overriding judicial goal of deciding cases correctly, on the basis of their legal and factual merits, with the interest of both litigants and the courts in the finality of judgments. *Pena v. Seguros La Comercial,* 770 F.2d 811, 814 (9th Cir. 1985). The rule does so by limiting both the reasons for which relief from a judgment may be granted, and the time in which a party may seek relief, while at the same time providing district courts with discretion within those limits to undo the finality of judgments in order to reach the merits of questions that have been decided wrongly or not at all.

■ Although the application of Rule 60(b) is committed to the discretion of the district courts and is therefore reviewable in this Court only for abuse of discretion, *United States v. 87 Skyline Terrace,* 26 F.3d 923, 929 (9th Cir.1994), this Court has admonished that, as a general matter, Rule

1. The interpleader plaintiffs have been dismissed from the case and, by stipulation, discharged of all liability arising out of payment of Plan benefits. Kathleen argues that this Court lacks jurisdiction to hear the appeal because Janet appealed from the denial of her Rule 60(b) motion without obtaining a certification pursuant to Fed.R.Civ.P. 54(b) while other issues remained pending before the District Court. However, the District Court has since adjudicated all claims with regard to all parties. A failure to obtain a Rule 54(b) certification is cured and finality is achieved as a

practical matter when the District Court resolves all claims with regard to all parties. *See Ethridge v. Harbor House Restaurant,* 861 F.2d 1389, 1402 (9th Cir.1988); *Anderson v. Allstate Ins. Co.,* 630 F.2d 677, 680–81 (9th Cir.1980). Therefore, Janet's appeal is not premature.

2. Janet's motion to set aside the default judgment, made less than a month after the default judgment was entered, was timely.

60(b) is "remedial in nature and ... must be liberally applied." *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir.1984) (per curiam). More specifically, in applying the general terms of Rule 60(b) to default judgments, this Court has emphasized that such judgments are "appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk, supra,* 739 F.2d at 463. Put another way, where there has been *no* merits decision, appropriate exercise of district court discretion under Rule 60(b) requires that the finality interest should give way fairly readily, to further the competing interest in reaching the merits of a dispute.

■■■ This does not mean, of course, that the moving party is absolved from the burden of demonstrating that, in a particular case, the interest in deciding the case on the merits should prevail over the very important interest in the finality of judgments. Rather, based on the principles elucidated above, this court has held that three factors derived from the "good cause" standard that governs the lifting of entries of default under Fed.R.Civ.P. 55(c) govern the vacating of a default judgment under Rule 60(b) as well.[3] Those factors are: whether the defendant's culpable conduct led to the default; whether the defendant has a meritorious defense; and whether reopening the default judgment would prejudice the plaintiff. *See Falk, supra,* 739 F.2d at 463; *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir.1988); *see also Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 656 (3d Cir.1982) (explaining that the same factors that constitute "good cause" under Rule 55(c) govern the lifting of default judgments under Rule 60(b)); *United Coin Meter Co. v. Seaboard Coastline R.R.,* 705 F.2d 839, 845 (6th Cir.1983) (same). As is true with respect to any Rule 60(b) motion and with respect to a defaulting party invoking Rule 55(c), the party seeking to vacate a default judgment bears the burden of demonstrating that these factors favor vacating the judgment. *See Cassidy v. Tenorio,* 856 F.2d 1412, 1415 (9th Cir. 1988).

Our understanding of what Rule 60(b)(1) requires in the default judgment context is consistent with the Supreme Court's recent clarification of the concept of "excusable neglect" generally. That concept, the Supreme Court has made clear, is a general equitable one, not necessarily reserved for extraordinary circumstances, and takes account of factors such as "prejudice, the length of the delay and impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *see Briones v. Riviera Hotel & Casino,* 116 F.3d 379, 381 (9th Cir.1997) (holding that the *Pioneer Investment* "excusable neglect" standard applies to Rule 60(b)(1)); *cf. Bateman v. United States Postal Service,* 231 F.3d 1220 (9th Cir.2000) (applying *Pioneer Investment* standard to a Rule 60(b)(1) motion where judgment was entered for missing a filing deadline).

The *Falk* factors quite effectively capture in the default judgment context the very equitable factors involved in the balance between the competing interests in assuring substantial justice and in protecting the finality of judgments that underlies Rule 60(b)(1). A showing of lack of culpability sufficient to meet the Rule 55(c) "good cause" standard is ordinarily sufficient to demonstrate as well the "excusable neglect" or "mistake" criteria under Rule 60(b)(1), and there is therefore no reason to require that those 60(b)(1) criteria be established separately. *Meadows v. Dominican Republic,* 817 F.2d 517, 521 (9th Cir.1987). That is, if a defendant's con-

---

**3.** Rule 55(c) provides:
  "Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

duct was not "culpable," then her failure to respond to a lawsuit is ordinarily "excusable," and in the interests of substantial justice the better course may well be to vacate the default judgment and decide the case on the merits. *See American Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir.1996). If, however, the defendant presents no meritorious defense, then nothing but pointless delay can result from reopening the judgment. *See Hawaii Carpenters' Trust Funds v. Stone,* 794 F.2d 508, 513 (9th Cir.1986). Similarly, if reopening the judgment would actually prejudice the plaintiff who has diligently pursued her claim, then the interest in finality should prevail. So the *Falk* factors are, as far as we can see, quite sufficient after *Pioneer Investment* to guide district courts' exercise of discretion under Rule 60(b)(1) in the context of default judgments.

It is with this background concerning the role of the various *Falk* factors that we proceed to apply the three-prong *Falk* standard to the facts of this case.

### III. Application of the Falk Standard

■ 1. *Culpable Conduct:* In this case, the district court's refusal to vacate the default judgment cannot be justified by any culpable conduct on the part of Janet Knoebber, the cross-claim defendant. Rather, considering all the circumstances, Janet's neglect in failing to answer Kathleen's cross-complaint is excusable, not culpable.

The usual articulation of the governing standard, oft repeated in our cases, is that "a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *Alan Neuman Prods., supra,* at 1392 (emphasis added); *see also Meadows, supra,* at 521. "Intentional" in many legal contexts means an act or omission taken by an actor knowing what the likely consequence will be. *See, e.g.,* Restatement of Torts 2d § 8A cmt. b; Wayne LaFave, Substantive Criminal Law § 3.5.

So one might think, reading this standard out of context, that a litigant who receives a pleading, reads and understands it, and takes no steps to meet the deadline for filing a responsive pleading acted intentionally in failing to answer, without more, and therefore cannot meet the culpability standard.

If that were our standard under Rule 60(b)(1), it would have to be revised after *Pioneer Investment. Pioneer Investment* made clear that the word "neglect" "encompasses simple, faultless omissions to act and, more commonly, omissions caused by carelessness." 507 U.S. at 388, 113 S.Ct. 1489. In the first category, for example, are situations where "a party may choose to miss a deadline although for a very good reason, such as to render first aid to an accident victim discovered on the way to the courthouse." *Id.* Such an omission is "intentional" in the usual sense of that term; that is, it is the result of a conscious choice. Nonetheless, it is "neglect"—that is, " 'giv[ing] little attention or respect' " to the filing deadline in light of other considerations, *id.*—and the question becomes whether that "neglect" is "excusable," a question answered, as we have noted and as *Pioneer Investment* spells out, by considering a bevy of equitable considerations. To suppose that the making of a conscious choice, without more, precludes a finding that "neglect" is "excusable" cannot be squared with *Pioneer Investment.*

■ Our cases, however, have not used the term "intentional" in this sense. Instead, what we have meant is something more like, in the words of a recent Second Circuit opinion addressing the same issue, "willful, deliberate, or evidence of bad faith." *American Alliance Ins. Co., supra,* 92 F.3d at 61. Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not "intentional" under our default cases, and is therefore not *neces-*

*sarily*—although it certainly may be, once the equitable factors are considered—culpable or inexcusable.

In *Gregorian v. Izvestia,* for example, the defendants failed to respond to a lawsuit because they believed that the court lacked subject matter jurisdiction over them under the Foreign Sovereign Immunities Act. Although the defendants did not dispute that they received notice of the lawsuit, we found the case "distinguishable from those cases in which we have found a party's conduct to be culpable." 871 F.2d 1515, 1522 (9th Cir.1989). We explained that "culpability" involves "not simply non-appearance following receipt of notice of the action, but rather conduct which hindered judicial proceedings as to which subject matter jurisdiction was unchallenged." *Id.* at 1525 (distinguishing *Pena, supra,* 770 F.2d 811).

Similarly, in the recent *Bateman* case, an attorney left the country for a family emergency, missing the deadline to answer a motion for summary judgment while he was away, and did not contact the district court or opposing counsel until 16 days after his return because it took that long for him to recover from his trip and sort through his mail. Summary judgment was granted in the interim as unopposed. Applying the *Pioneer Investment* factors, we noted that his reasons for the delay were weak, but not the result of "deviousness or willfulness," *id.,* and, applying the remaining *Pioneer Investment* factors, we concluded that because the lawyer acted in good faith, without prejudice to the opposing party, and with minimal delay or impact on the judicial proceedings, his neglect was excusable. *Id.* at 1225. Noteworthy for present purposes

is that the fact that the attorney knew that the summary judgment motion response would be due while he was away, yet did nothing about obtaining an extension, did not preclude a finding of "excusable neglect." *See id.* at 1223.[4]

As a final example, in *Falk v. Allen,* the default judgment case in this court most similar to this one, we vacated a default judgment entered against an individual defendant, a tenant sued by her landlord, excusing Allen's failure to appear at the hearing because she was leaving the country for medical treatment in Korea the following day. 739 F.2d at 461. Although Allen did not move to set aside the default judgment until some five months later, *Falk* also found this conduct not culpable because Allen did not return from Korea until two months after the judgment, and had difficulty obtaining assistance from the local legal services office. *Id.* at 464.[5] Again, our holding was not that Allen was unaware that she was supposed to answer the complaint, but that her knowing failure to answer was for understandable reasons, and in no way designed to obtain strategic advantage in the litigation.

In contrast, we have typically held that a defendant's conduct was culpable for purposes of the *Falk* factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond. *See, e.g., Kingvision Pay–Per–View Ltd. v. Lake Alice Bar,* 168 F.3d 347, 350 (9th Cir.1999) (defendant bar owners ignored the summons and complaint despite frequent chats with their lawyers during the period for answer, and filed false affidavits claiming they had not been served); *Pena, supra,* 770 F.2d at 815 (defendant insurer had provided its

---

**4.** *Bateman* was not analyzed as a default judgment case, but is closely analogous since it involved the entry of judgment for failing to meet a procedural deadline.

**5.** The defendant's or counsel's physical or mental illness is a common ground for finding conduct non-culpable when considering whether to lift a default judgment or overturn

the failure to lift a default judgment. *See, e.g., Leshore v. County of Worcester,* 945 F.2d 471 (1st Cir.1991); *Vac–Air, Inc. v. John Mohr & Sons, Inc.,* 471 F.2d 231 (7th Cir.1973); *Rooks v. American Brass Co.,* 263 F.2d 166 (6th Cir.1959) (per curiam); *Tri–Continental Leasing Corp. v. Zimmerman,* 485 F.Supp. 495, 497 (N.D.Cal.1980).

customers and state insurance regulators with an incorrect address, thereby precluding service of process on the company); *Alan Neuman Prods., supra,* 862 F.2d at 1390 (when served, defendant "did not admit who he was and refused to accept the papers from the process server, who laid them at [his] feet," and then retained counsel to check the docket for a return of service); *Meadows, supra,* 817 F.2d at 522 (defendants, the Dominican Republic and a Dominican public housing agency, were culpable in not answering the complaint because they were "aware of the relevant federal law, ... fully informed of the legal consequences of failing to respond, ... and sufficiently sophisticated and experienced in the requirements of American law to protect [their] interests"); *Richmark Corp. v. Timber Falling Consultants, Inc.,* 937 F.2d 1444, 1449 (9th Cir.1991) (foreign defendant revealed familiarity with U.S. courts by retaining local counsel to protect its interests in other matters); *Direct Mail Specialists, Inc. v. Eclat Computerized Tech., Inc.,* 840 F.2d 685, 690 (9th Cir.1988) (defendant was "a lawyer, presumably ... well aware of the dangers of ignoring service of process"); *see also Benny v. Pipes,* 799 F.2d 489, 494 (9th Cir.1986) (defendants' failure to answer complaint was culpable when defendants had first filed motions to extend their time to answer, indicating an ability to deal with legal requirements).[6]

Applying our established understanding of the *Falk* culpability prong, we conclude that because of her exigent personal circumstances, especially her mental state, and because of her lack of familiarity with legal matters,[7] Janet's failure to answer was not culpable. Janet had been widowed less than a year before Kathleen's action against her, and was distraught. She was in a psychiatrist's care for her severe depression, and was taking several strong psychoactive medications. For the twenty days during which she should have answered Kathleen's cross-claim, Janet was in the process of selling her home and moving herself and her two small children from California to Florida.

Importantly, there is no suggestion that Janet deliberately tried to manipulate the legal system. Her diligence in seeking to set aside the default judgment reveals no disrespect for the courts. Rather, like *Falk,* this is a case where a party unfamiliar with the legal system defaulted at a time of extreme personal difficulty; indeed, the circumstances here were, if anything, more exigent than in *Falk.*[8] Under all the circumstances, we consider Janet's conduct to be excusable.

2. *Meritorious Defenses:* Turning to the meritorious defense factor, we conclude that Janet has a potentially meritorious defense.[9]

---

**6.** As this summary of our cases shows, we have tended to consider the defaulting party's general familiarity with legal processes or consultation with lawyers at the time of the default as pertinent to the determination whether the party's conduct in failing to respond to legal process was deliberate, willful or in bad faith. *See, e.g., Meadows,* 817 F.2d at 522. Absent some explanation (such as offered by the attorney in *Bateman* ), it is fair to expect that individuals who have previously been involved in litigation or have consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves. We have not held, however, nor do we hold here, that legal sophistication or lack thereof is determinative of whether the culpability standard is met.

**7.** In her affidavit accompanying her motion to set aside the default judgment, Janet averred that she was "not schooled or learned in the legal field and did not understand the legal significance of the legal papers" served on her.

**8.** Kathleen Knoebber was also largely unfamiliar with the legal system prior to this litigation, and she too is grieving Thomas' death. However, the fact that Kathleen managed to litigate diligently from the outset despite her grief does not itself render Janet's conduct culpable.

**9.** Janet also alleged two other defenses: that service of process was inadequate, and that

A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. *See Madsen v. Bumb,* 419 F.2d 4, 6 (9th Cir. 1969) (holding that district court had not erred in declining to vacate default judgment when defendant offered "mere general denial without facts to support it"). But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy. *See, e.g., In re Stone,* 588 F.2d 1316, 1319 n. 2 (10th Cir.1978) (explaining that the movant need only demonstrate facts or law showing the trial court that "a sufficient defense is assertible"). That is why, for example, we held in *Falk v. Allen* that the defendant had a meritorious defense to an unlawful detainer action when she alleged that her landlord repeatedly accepted her late rental payments. Under Guam law, this allegation was sufficient to raise the defense of waiver, and the question whether the factual allegation was true would be the subject of the later litigation. *See Falk, supra,* 739 F.2d at 463.

Here, on the basis of the factual allegations that appear in the interpleader and cross-claim pleadings, Janet Knoebber may be entitled to a share of the $50,000 policy based on California law, even though Kathleen is the designated beneficiary. *See Emard v. Hughes Aircraft Co.,* 153 F.3d 949 (9th Cir.1998), *cert. denied sub nom. Stencel v. Emard,* 525 U.S. 1122, 119 S.Ct. 903, 142 L.Ed.2d 902 (1999). Whether Emard's reasoning survives the Supreme Court's recent decision in *Egelhoff v. Egelhoff,* 2000 WL 273198 (U.S. Mar. 21, 2001), is a question that we leave to the district court to decide in the first instance. Janet's reliance on *Emard* remains sufficient to assert a meritorious defense whose litigation below would not be a wholly empty exercise.

*Emard* involved facts similar to those in this case. Ginger Emard held a life insurance policy through her employer. Her first husband, Alex Stencel, was the beneficiary. After divorcing Stencel and remarrying, Emard did not complete a new designation of beneficiary form. When Emard died, her second husband asserted a claim to all or part of the policy as community property under California law, relying, as does Janet in this case, on the rule of California law that "when life insurance premiums are paid with community property funds, the resulting policy is an asset of the community." *Life Ins. Co. of North America v. Cassidy,* 35 Cal.3d 599, 605, 200 Cal.Rptr. 28, 676 P.2d 1050 (1984). Under that community property rule, a spouse may not be divested of her community property interest by the designation of another beneficiary without her consent, but instead may recover her community share of the asset. *See id.; see also In re Marriage of O'Connell,* 8 Cal. App.4th 565, 577–78, 10 Cal.Rptr.2d 334 (1992).

The insurance plan in *Emard* argued that ERISA preempts California community property law to the extent that state law would entitle someone other than the designated beneficiary of an ERISA plan to the plan's proceeds, but we rejected that contention. *See Emard, supra,* at 952. So the *Cassidy* principle continues to govern the distribution of life insurance benefits in California. And under California law, a court distributing community property must determine what share of each community asset was purchased with community, rather than separate, funds. *See Polk v. Polk,* 228 Cal.App.2d 763, 781, 39 Cal.Rptr. 824 (1964). Finally, California community property law regards a life insurance policy designating a spouse as the beneficiary as an inchoate gift to the spouse that becomes her separate property upon the insured's death. *See Sieroty v. Silver,* 58 Cal.2d 799, 804 n. 2, 26 Cal.Rptr. 635, 376 P.2d 563 (1962); *In re Miller's Estate,* 23 Cal.App.2d 16, 18, 71 P.2d 1117 (1937); 11 Witkin, Summary of California Law, Community Property § 27(b) (1990).

Applying these *Cassidy* and related rules, Janet Knoebber has alleged facts sufficient to present a meritorious defense

the Plan administrator failed to give effect to Thomas' intent to change the beneficiary of the $50,000 policy from Kathleen to Janet. The record supports neither allegation.

to Kathleen's counterclaim. Kathleen contends that even if Janet retains a community property interest in Thomas' life insurance policies, Janet has already received $123,000, or more than half of the total assets, and that Janet therefore has no right to any share of the $50,000 policy. But under California law, as just delineated, the $123,000 policy may be Janet's separate property, of no relevance to the community property distribution as between Janet and Thomas' estate.[10] And although Kathleen remains the $50,000 policy's named beneficiary, since the premiums paid during Thomas' marriage to Janet were paid from community funds, some portion of the $50,000 life insurance policy may be a community asset.

Janet has thus presented a meritorious defense to Kathleen's cross-claim, although whether she recovers and the amount of her recovery is still to be determined after the judgment is reopened.

■ 3. *Prejudice to the Plaintiff:* The final factor to consider is whether vacating the default judgment would prejudice Kathleen.

■ To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case. Rather, "the standard is whether [plaintiff's] ability to pursue his claim will be hindered." *Falk, supra,* 739 F.2d at 463; *see also Thompson, supra,* 95 F.3d at 433–34 (to be considered prejudicial, "the delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion").

It should be obvious why merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment. For had there been no default, the plaintiff would of course have had to litigate the merits of the case, incurring the costs of doing so.

A default judgment gives the plaintiff something of a windfall by sparing her from litigating the merits of her claim because of her opponent's failure to respond; vacating the default judgment merely restores the parties to an even footing in the litigation. *See Bateman,* 231 F.3d at 1225 (no prejudice simply because a party loses a quick victory due to an opponent's procedural default and must litigate on the merits).

Janet filed her motion to set aside the default judgment less than a month after it was entered, well within the one-year limit imposed by Rule 60(b). Since the entry of the default judgment against her, Janet has litigated diligently, and Kathleen points to no harm due to the short delay. Rather, Kathleen argues only that vacating the judgment would harm her because it would require her to continue litigating. But, as we have seen, the ordinary cost of litigating is simply not cognizable under *Falk*'s prejudice factor. Nor has Kathleen suffered any cognizable prejudice merely by incurring costs in litigating the default. While Kathleen was, of course, entitled to litigate her claim any way she chose to, the fact that she chose to oppose vacating the default and was unsuccessful in doing so cannot establish prejudice.

## CONCLUSION

We conclude that the District Court abused its discretion by entering a default judgment against Janet Knoebber under these circumstances. Therefore, we reverse the district court's decision denying Janet's motion to vacate the judgment and remand for further proceedings on the merits.

**REVERSED AND REMANDED.**

---

10. There is no contention that anyone other than Thomas or Janet had a right in the proceeds of the $123,000 policy.